

DA 09-0474

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 75

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

SHAWN EARL McDOWELL,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Broadwater, Cause No. DC 2008-37
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Shiloh Hernandez,
Assistant Appellate Defender, Helena, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

            John T. Flynn, Broadwater County Attorney, Townsend, Montana

Submitted on Briefs: March 16, 2011

Decided: April 14, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1　Shawn McDowell pleaded no contest in the District Court of the First Judicial District, Broadwater County, to assault with a weapon and burglary. He appeals his sentences. We affirm in part, reverse in part and remand to the District Court.

## ISSUES

¶2　McDowell raises two issues on appeal:

1. Whether the prosecutor breached the plea agreement.
2. Whether the District Court erred by not crediting McDowell for time served.

## BACKGROUND

¶3　On October 15, 2008, McDowell broke into the house of Amy Peters, his ex-girlfriend. He brought a gun and fired it while on the premises. Peters managed to flee unhurt and called the police from a neighbor's residence. McDowell was subsequently arrested.

¶4　The State initially charged McDowell with attempted deliberate homicide and aggravated burglary. On April 29, 2009, McDowell and the State entered into a plea agreement. McDowell agreed to plead no contest to assault with a weapon, § 45-5-213, MCA, and felony burglary, § 45-6-204, MCA. In exchange, the prosecutor agreed to make a sentencing recommendation. For assault with a weapon, the prosecutor agreed to recommend 20 years, with 10 suspended. With regard to burglary, the prosecutor agreed to recommend 10 years, all suspended. The sentences were to run consecutively. McDowell was permitted to argue for any sentence he deemed appropriate. He explicitly

acknowledged that the prosecutor's recommendation was not binding on the District Court, and his plea could result in the maximum punishment for each offense.

¶5 On June 4, 2009, Probation Officer Darrell Vanderhoef prepared a Pre-Sentence Investigation report (PSI). It included the details of the offense and McDowell's criminal history, including four prior felonies and previous failures at supervised release. Vanderhoef recommended sentences of 20 years, with 5 suspended, for assault with a weapon, and 20 years, with 5 suspended, for the burglary.

¶6 On the day of sentencing, Peters decided she wanted to testify. The prosecutor called her to the stand and asked her to give a statement with regard to McDowell's sentence. Peters proceeded to explain:

> I had to give up my home here that I was buying. And I had to move my son completely away because of all of this. It's been really nerve-racking. I can't sleep at night still. I have panic attacks. I check my doors and my windows like five, six times a night before I even go to bed. It's very hard. . . . And I don't think that he should get off on a minimal sentence. I mean, I got a phone call saying that he could be going away for 2 years, and I have to deal with this for the rest of my life for what he's done. . . . I can't come back to Townsend and visit my family because I get confronted by people, I get harassed by people. It's hard. And I don't think he should get off on this. . . . I think he should be punished for what he's done to me and he's done to my son.

¶7 The State's only other witness was Vanderhoef. He testified that he had prepared the PSI, which included a sentence recommendation. The State did not ask for, and Vanderhoef did not offer, the specifics of the PSI's recommended sentence. The prosecutor then asked Vanderhoef if there was anything, not in the PSI, that he would like to add. Vanderhoef answered affirmatively and recommended a fine of $5,000. He explained that McDowell had self-reported a monthly income of $2,000 from Workers'

3

Compensation Benefits, which had accumulated to nearly $10,000 while he was incarcerated.

¶8 McDowell called three character witnesses, on his behalf. The prosecutor declined to cross-examine two of them. The third, he asked two brief questions with regard to how McDowell came to possess a firearm.

¶9 At summation, the prosecutor recommended the sentence set forth in the plea agreement. He emphasized that the crimes were premeditated, serious and that McDowell had a prior criminal history. He pointed to the PSI as confirmation of these assertions. Finally, he recommended both prison time, and supervised release, subject to conditions set forth in the PSI. In response, McDowell argued that the PSI only told one side of the story, and recommended a total sentence of five years.

¶10 The District Court generally agreed with the PSI's recommendations. The sentencing judge explained his concern with McDowell's prior felonies and inability to comply with supervised release. The District Court further noted that during the course of the current action, McDowell's pre-trial release had been revoked. For the charge of burglary, McDowell received 20 years, with 10 suspended. For assault with a weapon, McDowell received 20 years, with 5 suspended. The sentences were to run consecutively. Additionally, the District Court imposed a $5,000 fine, for assault with a weapon, and subjected McDowell to all of the recommended conditions contained in the PSI. After a failed attempt to withdraw his guilty plea, McDowell appealed, arguing that the State had breached the plea agreement.

## STANDARDS OF REVIEW

¶11    "Where a defendant was sentenced to more than one year of actual incarceration, and therefore is eligible for sentence review, we review the sentence for legality only." *State v. Bullplume*, 2011 MT 40, ¶ 10, 359 Mont. 289, ___ P.3d ___.

¶12    Whether the State has breached a plea agreement is a question of law this Court reviews de novo. *Bullplume*, ¶ 10.

## DISCUSSION

¶13    *Whether the prosecutor breached the plea agreement.*

¶14    A plea agreement is essentially a contract and is subject to contract law standards. *State v. Manywhitehorses*, 2010 MT 225, ¶ 10, 358 Mont. 46, 243 P.3d 412.  In order to retain the benefit derived from a defendant's plea, the State must fulfill its contractual obligations strictly and meticulously.  *State v. Rardon*, 2005 MT 129, ¶ 18, 327 Mont. 228, 115 P.3d 182 (*Rardon III*).  When the State agrees to recommend a specific sentence, a prosecutor becomes obligated to approach sentencing in a manner that will not undermine the agreement.  *Bullplume*, ¶ 13.  Prosecutorial violation of the agreement is unacceptable, even if done inadvertently, in a good faith pursuit of justice.  *Rardon III*, ¶ 18.  There are no hard and fast criteria for determining when a plea agreement has been breached, because each case turns on its own unique facts.  *Manywhitehorses*, ¶ 14.

¶15    McDowell asserts two theories regarding the State's alleged breach.  He argues that the prosecutor's presentation at sentencing undermined the State's sentencing recommendation.  Additionally, he asserts that the prosecutor breached the agreement by recommending the PSI's sentence conditions.  We address each in turn.

5

¶16 McDowell first asserts that the prosecutor merely paid "lip service" to the plea agreement's sentencing recommendation, while actively eliciting testimony undermining that recommendation. A prosecutor enjoys wide latitude in submitting evidence at sentencing, but must temper his or her case by adhering to obligations or restrictions contained in a plea agreement. *Rardon III*, ¶ 19. Here, the plea agreement did not limit the prosecutor's ability to call or cross-examine witnesses. It required that he recommend an agreed-to sentence.

¶17 This Court has previously addressed circumstances where a prosecutor was accused of undercutting a sentencing recommendation. In *State v. Rardon*, 2002 MT 345, ¶19, 313 Mont. 321, 61 P.3d 132 (*Rardon II*), the prosecutor expressly recommended the agreed-to sentence in the plea agreement. *Id.* However, the State's presentation entirely undercut that recommendation. *Id.* The prosecutor informed witnesses of the potential brevity of Rardon's prison time, asked them whether they agreed with that sentence, and elicited suggestions for longer periods of imprisonment. *Id.* During cross-examination, the prosecutor attempted to get Rardon to agree that he should be imprisoned until his grandchildren were grown. *Id.* Furthermore, the prosecutor emphasized negative aspects of Rardon's sexual offender evaluation and suggested that a long-term prison sentence would be good motivation. *Rardon II*, ¶ 20. This Court concluded "the prosecutor's fervor in soliciting and offering evidence that would almost undoubtedly cause the court to question the appropriateness of the recommended sentence effectively undercut the plea agreement." *Rardon II*, ¶ 22.

¶18 Conversely, in *Rardon III*, this Court concluded that the prosecutor's presentation did not undermine the plea-bargained sentence despite the State's elicitation of evidence similar to *Rardon II*. *Rardon III*, ¶¶ 20-22. The State's witnesses offered testimony regarding Rardon's abusive history and support for a lengthy sentence. *Rardon III*, ¶¶ 16-17, 22. However, the mere fact that such testimony emerged did not establish a breach of the plea agreement. *Rardon III*, ¶ 22. Rather, the Court examined the manner and circumstances by which that testimony was elicited. *Rardon III*, ¶¶ 21-22. Ultimately, the Court concluded that the improprieties evidenced in *Rardon II* were not present. *Rardon III*, ¶¶ 21-22. Thus, despite eliciting testimony detrimental to Rardon, the prosecutor's presentation appropriately encouraged relevant testimony that properly informed the sentencing judge. *Rardon III*, ¶ 20.

¶19 In the case at hand, the prosecutor's conduct at sentencing did not undercut the plea agreement. Peters, the State's first witness, was the victim of McDowell's offenses. Montana law provides that a victim may "present a statement concerning the effects of the crime on the victim, the circumstances surrounding the crime, the manner in which the crime was perpetrated, and *the victim's opinion regarding appropriate sentence*." Section 46-18-115(4)(a), MCA (emphasis added). Peters was entitled to testify regardless of whether or not the prosecutor called her. Unlike *Rardon II*, the prosecutor did not ask her to compare sentences, or attempt to elicit inflammatory testimony. Rather, he simply offered her the opportunity to state her opinion, as provided for by statute.

7

¶20 Furthermore, Vanderhoef's recommendation of the $5,000 fine did not undermine the plea agreement. The parties were aware that the District Court had ordered a PSI. As the author of that report, Vanderhoef was an appropriate witness to call at sentencing. Although there is no legal requirement that the State present testimony from the person who prepared the PSI, this Court has recognized that failure to do so can result in a weak or incomplete presentation to the sentencing judge. *State v. LeMere*, 272 Mont. 355, 359, 900 P.2d 926 (1995). Here, the prosecutor's inquiry, whether there was anything else the District Court should know, was an appropriate question, relevant to the sentencing judge. *Rardon III*, ¶ 20. In the absence of any offensive conduct similar to *Rardon II*, McDowell essentially asks the Court to presume prosecutorial impropriety because a dispassionate question resulted in a detrimental response from Vanderhoef. This is the type of result-proves-the-breach argument that the Court rejected in *Rardon III*. *Rardon III*, ¶ 22.

¶21 Finally, the prosecutor's summation did not undermine the plea agreement's recommended sentence. McDowell argues that the prosecutor "telegraphed" support for the PSI's recommended sentence because he relied on facts contained in the PSI. This argument is without merit. The State recommended that McDowell receive a total sentence of 30 years, with 20 suspended. McDowell argued for a total of five years. In other words, the prosecutor had to both advocate against McDowell's recommended sentence and argue for the sentence in the plea agreement. To do so, the prosecutor appropriately pointed out that McDowell had pled no contest to two felonies and had a prior criminal history. These facts were set forth in the PSI, as required by law. Section

46-18-112, MCA. It is unreasonable to argue that a prosecutor must disown pertinent facts simply because they happen to be contained in a PSI that recommends a different sentence. We conclude that the prosecutor's presentation and argument before the District Court did not undermine the plea agreement.

¶22 McDowell's second argument is that the State expressly breached the plea agreement when the prosecutor recommended that the District Court impose conditions on the suspended portion of McDowell's sentence. He contends that this recommendation was contrary to the plea agreement and constituted breach. The State responds that this argument was not raised below and was waived. On appeal, parties are permitted to bolster preserved issues with new legal authority or make further arguments within the scope of the legal theory advanced in the district court. *State v. Montgomery*, 2010 MT 193, ¶ 12, 357 Mont. 348, 239 P.3d 929. In District Court, McDowell argued that the State had conducted itself in a manner that constituted a breach of the plea agreement. On appeal, McDowell has not raised a new legal theory, but rather refined his argument presented below.

¶23 Prosecutors are held to strict and meticulous standards because, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *State v. Rardon*, 1999 MT 220, ¶ 14, 296 Mont. 19, 986 P.2d 424 (*Rardon I*); *see State v. Allen*, 199 Mont. 204, 209, 645 P.2d 380, 382 (1981) (citing *Correale v. United States*, 479 F.2d 944 (1st Cir. 1973)). In order to ensure that the plea bargain process is fair to the defendant, there must be "safeguards to insure the defendant what is reasonably due in

9

the circumstances." *Rardon I*, ¶ 14. McDowell fails to establish that his plea was based on a belief that the State had promised to not recommend any conditions for the suspended portion of his sentence.

¶24 The explicit terms of the agreement establish that McDowell received what was reasonably due in the circumstances: a reduction in charges, and the recommendation of a specific reduced sentence. McDowell was originally charged with attempted deliberate homicide and aggravated burglary. Attempted deliberate homicide carries potential penalties of death, a prison-term for life, or 100 years imprisonment. Sections 45-4-103, and 45-5-102, MCA. Aggravated burglary has the potential of a 40-year term of imprisonment. Section 45-6-204, MCA. Upon entering into the plea agreement, McDowell immediately benefitted by avoiding those potential sentences. At sentencing, the prosecutor fulfilled his additional promise and recommended a 30-year term, with 20 years suspended.

¶25 Moreover, we agree with the State that it is unreasonable for McDowell to argue that he expected no conditions would be placed on a 20-year suspended sentence. Conditions on suspended sentences are commonplace, especially for prior felons like McDowell, who have proven themselves poor candidates for unsupervised release. McDowell received the benefits he bargained for. He cannot now argue that his plea was based "to a significant degree" on any unfulfilled promise. Based upon the facts of this case, the prosecutor did not breach the plea agreement.

¶26 *Whether the District Court erred by failing to credit McDowell for time served.*

¶27    Each day of incarceration prior to or after a conviction must be credited against a defendant's sentence.  Section 46-18-403(1), MCA; *State v. Dewitt*, 2006 MT 302, ¶ 10, 334 Mont. 474, 149 P.3d 549.   McDowell was incarcerated in 2008, released, and subsequently re-incarcerated until sentencing.  However, the District Court did not give McDowell any credit for this time served.  We conclude this was error.

¶28    We remand this case to the District Court for a determination of the correct amount of credit to be given for time served.


                                                        /S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES C. NELSON

11