

DA 11-0388

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 157

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHRISTOPHER ROBIN LEWIS,

      Defendant and Appellant.


| | |
|---|---|
| APPEAL FROM: | District Court of the Twenty-First Judicial District, In and For the County of Ravalli, Cause No. DC 10-34 Honorable Jeffrey H. Langton, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Robin A. Meguire, Attorney at Law, Great Falls, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

          William Fulbright, Ravalli County Attorney, Hamilton, Montana


                        Submitted on Briefs:  June 6, 2012
                                    Decided:  July 24, 2012

Filed:

_____
                          Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Christopher Robin Lewis (Lewis) appeals from a judgment and commitment entered by the Twenty-First Judicial District, Ravalli County, finding him ineligible for parole during his ten year prison term for aggravated assault. We affirm.

## BACKGROUND

¶2 In March 2010, Lewis was charged with one count of aggravated assault for the abuse of his son L.L. and one count of assault on a minor for the abuse of his other son A.L. Lewis initially pled not guilty to the charges against him. On January 18, 2011, the parties entered an "appropriate plea" agreement, pursuant to § 46-12-211(1)(b), MCA, wherein Lewis agreed to plead either guilty or no contest to the aggravated assault charge in exchange for the State's dismissal of the charge of assault on a minor. The parties further agreed that their separate recommendations for an appropriate sentence would fall within the following range:

> The State: The State will recommend a twenty (20) year commitment to Montana State Prison, with ten (10) years suspended.

> Defendant: The Defendant may recommend a sentence no less restrictive than a ten (10) year commitment to the Department of Corrections, with five (5) years suspended.

Nothing in the plea agreement addressed the District Court's authority to restrict Lewis' eligibility for parole, and it contained no commitment from the State regarding such a restriction. Section 3 of the plea agreement also provided that the parties were "otherwise free to recommend and argue for any other lawful term of sentence and/or conditions thereto, subject to a final decision by the court."

2

¶3 The District Court held a change of plea hearing on January 19, 2011. During the hearing, the parties confirmed the terms of and their individual obligations under the plea agreement. The State also stated it would not be seeking a parole restriction. The court then explained to Lewis that, due to the nature of the plea agreement, Lewis could withdraw his plea if the court did not follow the plea agreement. Lewis stated he understood the consequences of the agreement and pled no contest to the charge of aggravated assault.

¶4 The District Court deferred sentencing until after a presentence investigation report (PSI) could be completed. The probation officer who completed the PSI recommended that the court impose a twenty-year commitment to the Department of Corrections (DOC) with fifteen years suspended. The PSI also recommended that Lewis "not be considered eligible for release into the community until he has completed in-patient chemical dependency treatment, anger management, all phases of Cognitive Principles and Restructuring and be assessed for any mental health concerns."

¶5 Lewis took issue with this recommendation, and filed a written sentencing memorandum. In his memorandum, Lewis argued that the court, pursuant to *State v. Burch*, 2008 MT 118, 342 Mont. 499, 182 P.3d 66, had no authority to impose restrictions on his early release, and that the determination of whether to grant the privilege of early release belonged solely to the DOC. This was Lewis' only argument against imposing a parole restriction; he did not argue that the plea agreement prohibited a parole restriction, that the State agreed such a restriction would not be imposed, or that the court would be required to reject the agreement in order to impose such a restriction.

3

¶6 On March 23, 2011, the District Court held a sentencing hearing. At the hearing, the State, in accordance with the plea agreement, recommended a sentence of twenty years at the Montana State Prison (MSP) with ten years suspended. The prosecutor also responded to Lewis' sentencing memorandum and stated that § 46-18-202(2), MCA, authorizes a district court to reasonably restrict a defendant's parole eligibility, but made no recommendation to the court regarding Lewis' parole eligibility. Instead, the prosecutor explicitly stated that he would leave the decision of whether to impose a parole restriction to the discretion of the court. Defense counsel once again argued that the court should impose a DOC sentence, and that the court was not authorized to impose any restrictions on the DOC's ability to release Lewis early under such a commitment.

¶7 The District Court accepted the plea agreement, and imposed a twenty-year commitment to MSP with ten years suspended, but ordered that Lewis serve the MSP commitment "without benefit of parole." The court's conclusion was "based on the severity of what occurred and the utter helpless nature of the victim," and it believed that Lewis "should be given the most severe sanction" within the limits of the plea agreement. Beyond this, the court did not discuss its specific reasons for imposing the parole ineligibility restriction.[1] Although a District Court is required to set forth its reasons for imposing a parole restriction pursuant to § 46-18-202(2), MCA, Lewis never objected to his sentence for this reason.

---

[1] The written sentencing order, issued April 5, 2011, similarly did not contain a specific rationale for the court's imposition of the parole restriction.

¶8 Lewis did, however, make one objection to his sentence. He objected on the grounds that the District Court had exceeded the bounds of the plea agreement by declaring Lewis ineligible for parole. In response, the sentencing judge stated that the plea agreement "didn't address parole eligibility," which permitted the court "to impose parole restrictions up to and including the entire sentence." Defense Counsel then admitted that the plea agreement was silent regarding the issue of parole ineligibility, but maintained his objection.

¶9 On April 19, 2011, Lewis filed a motion for specific performance of the plea agreement, or in the alternative, a motion for reconsideration of the sentencing order. In the State's response brief, it argued that the District Court was free to impose a parole restriction. Notably, in Lewis' reply brief he asserted that "[i]f the State is advocating that the Court should rule in a manner that results in retention of the parole restriction, that position could arguably constitute a breach of the plea agreement." The District Court denied the motion on May 10, 2011. Lewis timely appealed, and raised the following issues:

¶10 *Issue One: Whether the District Court's imposition of the parole restriction violated the plea agreement?*

¶11 *Issue Two: Whether the prosecutor breached the plea agreement?*

¶12 *Issue Three: Whether the District Court erred when it failed to specifically state its reasons for imposing a parole restriction?*

## STANDARD OF REVIEW

¶13 A plea agreement is essentially a contract and is subject to contract law standards. *State v. McDowell*, 2011 MT 75, ¶ 14, 360 Mont. 83, 253 P.3d 812. We review the district

court's interpretation of a contract for correctness. *Brothers v. Home Value Stores, Inc.*, 2012 MT 121, ¶ 6, 365 Mont. 196, __ P.3d __. Whether the State has breached a plea agreement is a question of law, which we review de novo. *McDowell*, ¶ 12 (citing *State v. Bullplume*, 2011 MT 40, ¶ 10, 359 Mont. 289, 251 P.3d 114). When a defendant is sentenced to more than one year of actual incarceration, we review the sentence for legality only. *McDowell*, ¶ 11 (citing *Bullplume*, ¶ 10).

## DISCUSSION

¶14    *Issue One: Whether the District Court's imposition of parole restriction violated the plea agreement?*

¶15    Lewis argues that the State, through the prosecutor's representations that he would not seek a parole restriction and that he would leave that decision to the court, agreed that the plea agreement encompassed a condition that Lewis' parole eligibility would not be restricted. Therefore, Lewis argues, the District Court erred when it simultaneously accepted the parties' agreed disposition, but still imposed a no-parole eligibility restriction on Lewis' sentence without affording Lewis the opportunity to withdraw his no contest plea. The State argues that the prosecutor's verbal representations did not alter the plea agreement.

¶16    A plea agreement is a contract subject to contract law standards. *McDowell*, ¶ 14. Contract law principles mandate that " '[w]here the contractual language is clear and unambiguous on its face, it is this Court's duty to enforce the contract as drafted and executed by the parties.' " *State v. Shepard*, 2010 MT 20, ¶ 14, 355 Mont. 114, 225 P.3d 1217 (citing *Felska v. Goulding*, 238 Mont. 224, 230, 776 P.2d 530, 534 (1989)).

6

¶17    The written plea agreement between Lewis and the State clearly demonstrates that the parties did not come to an agreement as to whether Lewis' sentence would include a restriction on his eligibility for parole.  The plea agreement is silent, as defense counsel agrees, regarding parole ineligibility.  Additionally, Section 3 of the plea agreement unambiguously permitted either party "to recommend and argue for any other lawful term of sentence and/or conditions thereto."   Thus, the plain language of the plea agreement demonstrates that the District Court could impose any lawful conditions on the sentence, as long as the sentence fell within the agreed upon disposition.

¶18    Nevertheless, Lewis argues that the prosecutor's representations either clarified the plea agreement or amended it to include a provision that Lewis would be eligible for parole.  Lewis cites to *Shepard*, ¶¶ 11-12, for the proposition that a party's statements prior to sentencing can amend a written plea agreement.  This Court in *Shepard*, however, did not reach that conclusion.  Instead, we concluded that the State could not assert that a parole restriction was not part of the plea agreement on appeal because it constituted a change in theory from the trial court, which we would not consider on appeal.  *Shepard*, ¶ 12.

¶19    Moreover, Lewis' reliance on the prosecutor's statements is misplaced.   The prosecutor, pursuant to Section 3 of the plea agreement, was free to either seek a parole restriction, or not. The prosecutor opted for the latter and promised he would not seek a parole restriction; a restriction he never sought, and never represented was part of the plea agreement.  In addition, the prosecutor made it clear to the court that it was within the court's discretion to impose a parole restriction if it saw fit.  The prosecutor's comments did not

modify the plea agreement in any way, thus the unambiguous language of the contract is controlling. Accordingly, the court was within its authority to accept the plea agreement and impose a parole restriction without offering Lewis the opportunity to withdraw his plea.

¶20 *Issue Two: Did the prosecutor breach the plea agreement?*

¶21 Lewis maintains that the prosecutor breached the plea agreement at the sentencing hearing and again when he opposed the State's motion for specific performance of the plea agreement. The State argues that we cannot review this portion of Lewis' appeal due to the fact that Lewis' position is opposite of the argument he advanced at the District Court. After the District Court sentenced Lewis, he filed a motion for specific performance of the plea agreement, and in his reply brief, Lewis stated that he "does not contend that the State breached the plea agreement at sentencing." He now asserts that the prosecutor breached the plea agreement at sentencing.

¶22 "It is well settled that '[a] party may not change its theory on appeal from that advanced in the trial court; nor may a party raise an argument for the first time on appeal.'" *Shepard*, ¶ 12 (quoting *State v. Anderson*, 1999 MT 60, ¶ 25, 293 Mont. 490, 977 P.2d 983). We will not fault a district court for an action in which the appealing party acquiesced or actively participated. *State v. Holt*, 2011 MT 42, ¶ 17, 359 Mont. 308, 249 P.3d 470 (citing *State v. Micklon*, 2003 MT 45, ¶ 10, 314 Mont. 291, 65 P.3d 559). We may, however, review claimed errors that implicate fundamental constitutional rights, when failing to do so may leave unsettled the question of the fundamental fairness of the trial or proceeding. *State v. Rardon*, 2002 MT 345, ¶ 16, 313 Mont. 321, 61 P.3d 132. Given that the claimed error in

8

this case does not raise a question concerning the fundamental fairness of the trial court proceeding and that Lewis purposefully acquiesced to the prosecutor's actions, we will not further consider the matter of whether the prosecutor's comments at sentencing constituted a breach of the plea agreement.

¶23 Lewis additionally argues that the prosecutor breached the plea agreement when he advocated, in his response brief, that the District Court deny Lewis' motion for specific performance. In order to retain the benefit derived from a defendant's plea, the State must fulfill its contractual obligations strictly and meticulously. *McDowell*, ¶ 14. Upon agreeing to recommend a specific sentence, a prosecutor becomes obligated to approach sentencing in a manner that will not undermine the agreement. *McDowell*, ¶ 14. Prosecutorial violation of the agreement is unacceptable, even if done inadvertently, in a good faith pursuit of justice. *McDowell*, ¶ 14. Each case turns on its own unique facts, thus there are no "hard and fast criteria for determining when a plea agreement has been breached." *McDowell*, ¶ 14.

¶24 The facts of this case demonstrate that the prosecutor did not breach or undermine the plea agreement by defending the District Court's decision to impose a parole restriction. In responding to Lewis' motion for specific performance of the plea agreement, the prosecutor was not urging the court to impose a parole restriction, but rather, rebutting Lewis' contention that the parole restriction violated the plea agreement. In an analogous situation, this Court has held that "[i]f a defendant chooses to present information in support of a sentence he argues for, the State may counter with testimony to the effect that such information is misleading or untrue, without breaching the plea agreement." *State v.*

9

*Bartosh*, 2007 MT 59, ¶ 22, 336 Mont. 212, 154 P.3d 58. Though *Bartosh* concerned dueling testimony, the analysis is equally applicable to this matter: when a defendant presents a legal argument in favor of his recommended sentence, the prosecutor may point out the flaws in that legal argument without breaching the plea agreement. To find otherwise would lead to an absurd result. A defendant would merely have to allege that the court misinterpreted the plea agreement, and if the prosecutor responded, the prosecutor would be in breach of the plea agreement. Accordingly, we conclude that the prosecutor did not breach the plea agreement by responding to Lewis' motion for specific performance.

¶25 *Issue Three: Did the District Court err when it failed to specifically state its reasons for imposing a parole restriction?*

¶26 Lewis argues that the District Court failed to provide specific reasons, as required by § 46-18-202(2), MCA, for imposing the parole restriction, and therefore his sentence is illegal. The District Court is imbued with exclusive authority to impose criminal sentences, including the power to impose a restriction that the offender is ineligible for parole. Sections 46-18-103, -202(2), MCA. If, however, the District Court imposes a parole restriction, the sentencing judge "shall state the reasons for it in writing," or if the restriction is "necessary for the protection of society[,] . . . the judgment must contain a statement of the reasons for the restriction." Section 46-18-202(2), MCA. As noted above, Lewis raises this issue for the first time on appeal.

¶27 As a general rule, we will not review an issue on appeal if the party raising the issue did not object at the trial court. *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151

P.3d 892. An exception to this general rule was enunciated in *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979), where we held that an appellate court may review any sentence, even if not objected to at the trial court, if it is alleged that such sentence is illegal or exceeds statutory mandates. A sentence is not illegal if it falls within statutory parameters. *Kotwicki*, ¶ 13. A sentencing court's failure to abide by statutory requirements is an objectionable sentence, not necessarily an illegal one. *Kotwicki*, ¶ 13; *See also State v. Swoboda*, 276 Mont. 479, 482, 918 P.2d 296, 298 (1996); *State v. Nelson*, 274 Mont. 11, 20, 906 P.2d 663, 668 (1995).

¶28    This court declined to apply the *Lenihan* rule in *Kotwicki*, ¶ 22, because the defendant's sentence was merely objectionable, and not illegal. Kotwicki was convicted of numerous drug charges, and as part of his sentence he was required to pay a $25,000 fine, which fell within the court's authority to impose up to a $50,000 fine. At the trial court, Kotwicki did not object to the fine on the grounds that the district court failed to inquire whether he had the ability to pay. *Kotwicki*, ¶¶ 3-4. On appeal, Kotwicki argued that his sentence was illegal because the court failed to make specific findings, as required by § 46-18-231(3), MCA, on Kotwicki's resources before imposing the fine. This Court declined to review the sentence, however, because the district court's failure to make specific findings rendered the sentence objectionable, but not illegal. *Kotwicki*, ¶ 21. In so concluding, this Court noted that Kotwicki, "although alleging an illegal sentence, fail[ed] to present a colorable claim that his sentence fell outside the statutory parameters as to warrant our review under the *Lenihan* rule." *Kotwicki*, ¶ 22.

11

¶29 Similarly, in *Swoboda* and *Nelson*, the trial court failed to explicitly consider alternatives to prison, as required by § 46-18-225, MCA, before imposing a prison sentence on a nonviolent offender. *Swoboda*, 276 Mont. at 480-81, 918 P.2d at 297; *Nelson*, 274 Mont. at 17, 906 P.2d at 665. The defendant in each case failed to object to this error at the sentencing hearing, and then challenged the legality of the sentence on appeal due to the court's failure to consider sentences alternative to prison. *Swoboda*, 276 Mont. at 482, 918 P.2d at 298; *Nelson*, 274 Mont. at 17-18, 906 P.2d at 668. This court concluded in both cases that the sentencing court could have legally sentenced Swoboda and Nelson to prison, even after considering sentencing alternatives to prison, thus the *Lenihan* rule was inapplicable. *Swoboda*, 276 Mont. at 482, 918 P.2d at 298; *Nelson*, 274 Mont. at 20, 906 P.2d at 668.

¶30 In spite of these cases, Lewis notes that we have considered parole eligibility restrictions even absent an objection from a defendant. The cases Lewis relies upon are clearly distinguishable from the present matter. *State v. Garrymore*, 2006 MT 245, 334 Mont. 1, 145 P.3d 946, is inapposite because the issue was not whether the proper statutory requirements were followed – as it is here – but whether the parole eligibility restriction in and of itself violated Garrymore's federal and state constitutional and statutory rights. Similarly, in *State v. Olivares-Coster*, 2011 MT 196, 361 Mont. 380, 259 P.3d 760, we reviewed, with the State's acquiescence, whether an offender under the age of eighteen is subject to the mandatory parole eligibility restrictions in § 46-23-201(4), MCA, in contravention of § 46-18-222(1), MCA. Unlike both *Garrymore* and *Olivares-Coster*,

Lewis' failure to object in this case is not based on the statute or the sentence being illegal or exceeding statutory mandates, but merely that the District Court did not follow the statutory requirements of § 46-18-202(2), MCA.

¶31 Based on our reasoning in *Kotwicki*, *Swoboda* and *Nelson*, we decline to apply the *Lenihan* rule in the present matter. The District Court, had it made the findings required by § 46-18-202(2), MCA, legally could have imposed a parole eligibility restriction. Section 46-18-202(2), MCA, authorizes a district court to impose a restriction limiting an offender's eligibility for parole during the offender's term of imprisonment. Lewis' parole ineligibility falls within the parameters of that statute, thus Lewis' sentence is not an illegal sentence for purpose of invoking the *Lenihan* rule and we will not consider this issue on appeal.

## CONCLUSION

¶32 For the reasons stated above, we affirm Lewis' sentence and judgment.


/S/ MICHAEL E WHEAT


We Concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ JIM RICE


13

Justice James C. Nelson specially concurs.

¶33    I concur in the Court's decision on Issues one and two and specially concur on Issue three.  As to Issue three, § 46-18-115, MCA, in pertinent part, requires:

> Before imposing sentence or making any other disposition upon acceptance of a plea or upon a verdict or finding of guilty, the court shall conduct a sentencing hearing, without unreasonable delay, as follows:
>
> .    .    .
>
> (6) In felony cases, the court shall specifically state all reasons for the sentence, including restrictions, conditions, or enhancements imposed, in open court on the record and in the written judgment.

¶34    In *State v. Osterloth*, 2000 MT 129, 299 Mont. 517, 1 P.3d 946, we interpreted this statute, and held that since the sentencing court did not set forth the reasons for the sentence imposed in its written judgment, to that extent, the court erred.  We did not, however, require that the court re-sentence the defendant, but we did remand with instructions that the court enter a modified written judgment setting forth the reasons for the sentence as stated in the District Court's oral judgment.  *Osterloth*, ¶¶ 39-41; *see also State v. Christianson*, 1999 MT 156, 295 Mont. 100, 983 P.2d 909 (holding that when the Sentence Review Division, acting as an arm of this Court, remanded the matter to the District Court, "the District Court had authority to issue an order amending the written judgment to list its reasons for imposing the parole eligibility restriction, in compliance with § 46-18-115(6) and § 46-18-202(2), MCA").

14

¶35    I would require the same thing in this case.  Section 46-18-202(2), MCA, like § 46-18-115(6), MCA, is a mandatory direction to the sentencing court to provide, in the written judgment, the reasons for any parole restriction imposed.  I continue to believe that judges must comply with the mandatory requirements of sentencing laws.  Where the black-letter law mandates that the judge do some particular thing, it is no excuse for his or her failure to do so that the defendant, the prosecutor, or the defense attorney failed to "tell" the judge to do what the law plainly requires.

¶36    Indeed, we presume that laypeople "know the law."[1]  Should we, then, presume less of judges—i.e., that they don't know the law?  Presuming that the trial judge here knew the law and his obligation to sentence according to the law, the court should have specified in the written judgment his reasons for imposing the parole restriction.

---

[1] Indeed we went on at length about that presumption in *State v. Payne,* 2011 MT 35, ¶ 22, 359 Mont. 270, 248 P.3d 842:

> We are persuaded by the State's argument that Payne is presumed to know the law of Montana.  For at least a century, it has been the law in Montana that "ignorance of the law is no defense."  *State ex rel. Rowe v. District Court*, 44 Mont. 318, 324, 119 P. 1103, 1106 (1911), *superseded by statute on other grounds in State ex rel. Shea v. Judicial Standards Comm.*, 198 Mont. 15, 643 P.2d 210 (1982) ("If a person accused of a crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result.  No system of criminal justice could be sustained with such an element in it to obstruct the course of its administration.").  We reiterated this rule in *State v. Trujillo,* 2008 MT 101, ¶ 15, 342 Mont. 319, 180 P.3d 1153, when we held that Trujillo unlawfully trespassed onto another's land despite his assertions that he had not passed through any gates or barriers intended to bar access.  Similarly, in *State v. G'Stohl*, 2010 MT 7, ¶ 14, 355 Mont. 43, 223 P.3d 926, we noted that "people are presumed to know the law" and will not be relieved of criminal

¶37    For that reason, I would, as we did in *Osterloth*, remand this cause to the sentencing court for entry of a modified written judgment setting forth the reasons for imposing the parole restriction.

¶38    I concur in Issues one and two, and, for the above reasons, specially concur in the result of Issue three subject to our remanding to the District Court for entry of a modified written judgment.

/S/ JAMES C. NELSON

---

liability for their failure to comply with it.