FILED

05/02/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0186

DA 21-0186

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 75N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

DONALD R. SAGE,

Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DC-18-126
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, James Reavis, Assistant Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

Ben Krakowka, Anaconda-Deer Lodge County Attorney, Michelle Sievers, Deputy County Attorney, Anaconda, Montana

Submitted on Briefs:  March 1, 2023

Decided:  May 2, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Donald Sage appeals his sentence from the Third Judicial District Court. Sage argues that his trial counsel rendered ineffective assistance when he failed to recognize that Sage would be unable to withdraw his plea if the court imposed a parole restriction. Sage contends also that the State undercut the plea agreement at the sentencing hearing, resulting in the parole restriction, when it emphasized Sage's past criminal conduct and urged the court to consider dismissed charges against Sage. We affirm without prejudice to Sage's ability to bring his ineffective assistance of counsel claim in a postconviction proceeding.

¶3 In November 2018, Anaconda-Deer Lodge Law Enforcement investigated Sage for alleged sexual abuse. The investigation started after Sage physically assaulted S.K., a sixteen-year-old boy, for confronting Sage about abusing his younger sister L.K. and her friends.

¶4 L.K. knew Sage through her friend L.M., who was related to Sage. In interviews with law enforcement and the Butte Child Evaluation Center, L.K. reported that she visited Sage's house—where he lived with his wife Marion—approximately twenty times. L.K.

2

reported that Sage would offer her and several other minor girls marijuana if they "did stuff" with him.

¶5 On one occasion, L.K. and L.M.—both fourteen at the time—spent the night at Sage's house. During the night, L.K. woke up to Sage naked on a nearby couch masturbating in front of the girls. Sage told the girls that he wanted to have sex with them. L.K. and L.M. ran into the bathroom, locking the door behind them. When they ventured out, Sage pointed a gun at the girls, threatening to shoot them if they moved. L.K. and L.M. escaped when Sage left the room to check on his wife.

¶6 L.K. had a follow-up interview with the Butte Child Evaluation Center. During the second interview, she revealed that on two separate occasions Sage gave her alcohol. Both times after consuming the alcohol, L.K. fell asleep. The first time this occurred, L.K. woke up to Sage's finger in her vagina. The second time, L.K. woke up with her clothes off and Sage's penis touching her vagina.

¶7 In total, five minor girls alleged crimes committed by Sage. The State initially charged Sage with three counts. On March 5, 2019, the State amended the charges to the following: Count I: Indecent Exposure (to a Minor), in violation of § 45-5-504, MCA; Count II: Indecent Exposure (to a Minor), in violation of § 45-5-504, MCA; Count III: Assault with a Weapon, in violation of § 45-5-213, MCA; Count IV: Sexual Intercourse without Consent, in violation of § 45-5-503, MCA; Count V: Sexual Intercourse without Consent, in violation of § 45-5-503, MCA; Alternate Count V: Sexual Assault, in violation of § 45-5-502, MCA; Count VI: Unlawful Transaction with Children, in violation of

§ 45-5-623, MCA; and Count VII: Unlawful Transaction with Children, in violation of § 45-5-623, MCA. The State later added Count VIII: Sexual Abuse of Children, in violation of § 45-5-625(1)(c), MCA; and Count IX: Intimidation, in violation of § 45-5-203, MCA.

¶8 On October 8, 2019, Sage entered a plea agreement with the State. In exchange for the State's dismissal of the eight other charges, Sage would plead guilty to one count of indecent exposure (to a minor). That charge was connected to Sage's actions against L.K. Sage admitted that he was "in the nude with [his] intimate parts exposed, while L.K. was at [his] home" and that he knew this conduct would cause L.K. to be alarmed and feel abused, harassed, humiliated, or degraded.

¶9 At the sentencing hearing, the State informed the District Court that three of the five minor girls did not want to proceed to trial, and the plea agreement limited additional trauma the girls might experience at a trial. Specific to L.K., the State explained to the court that she experiences "mental deficits" and a speech impediment. Neither the State nor L.K.'s family felt comfortable putting L.K. through trial. The State urged the court to follow the recommended sentence in the plea agreement: twenty years to the Montana State Prison with ten suspended. The State argued that the court should reject Sage's anticipated request for a probationary sentence, calling Sage "a sexual predator and a career criminal." It recounted Sage's criminal history, maintaining that his past conduct demonstrated an inability to conform his behavior. The State hoped "that by the time [Sage] complete[d] this sentence . . . he will not be in a condition to prey upon anyone else."

4

¶10 As predicted by the State, Sage's counsel asked that the District Court impose a probationary sentence, a lesser sentence than what the parties agreed to in the plea agreement. Sage asked for probation so he could be with his wife and address his various medical issues.

¶11 The court considered Sage's "extensive criminal history with no apparent recognition of any need . . . to change his criminal behavior." It found him to be "opportunistic" and "unrepentant." Further, the District Court noted that Sage's testimony at sentencing did not address L.K. as a victim or take accountability for his admitted actions. Noting the entire record, including Sage's psychosexual offender evaluation and the presentence investigation report, the court sentenced Sage to twenty years of incarceration with ten suspended as recommended by the plea agreement. The court found that Sage's willingness to victimize the "most vulnerable" justified removing him from society. The District Court imposed a ten-year parole restriction on the then-seventy-year-old Sage. The parole restriction was not requested by the State, nor did it appear in the plea agreement.

¶12 Sage's counsel urged the court to reconsider the parole restriction. Counsel referenced the binding nature of Sage's plea agreement, made pursuant to § 46-12-211(1)(b), MCA, emphasizing that the restriction of parole was not recommended in the agreement. Counsel suggested that the parole restriction gave Sage grounds to withdraw his plea. The District Court declined to rescind the parole restriction, noting that

the plea agreement was silent on the matter of parole. The court did not give Sage the opportunity to seek withdrawal of his plea.

¶13 "Ineffective assistance of counsel claims raise mixed questions of fact and law which we review de novo." *State v. Heavygun*, 2011 MT 111, ¶ 8, 360 Mont. 413, 253 P.3d 897 (citing *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861) (other citation omitted). We also review de novo whether the State breached a plea agreement. *State v. Lewis*, 2012 MT 157, ¶ 13, 365 Mont. 431, 282 P.3d 679.

¶14 Sage maintains that he experienced "two forces working against his intention to reserve his rights if the plea deal fell through." Sage contends first that his trial attorney provided ineffective assistance by not understanding that the plea agreement's silence on the matter of parole prevented Sage from withdrawing his plea in the event the court imposed a parole restriction. Sage argues next that the prosecutor undercut the plea agreement by using inflammatory descriptions of Sage, "only giving lip service to the bargained-for sentence."

¶15 The State counters that Sage's ineffective assistance of counsel claim is not appropriate for review because it is not a record-based claim. It urges this Court to deny Sage's claim without prejudice so that he may initiate postconviction proceedings. Further, the State contends that the prosecutor did not breach the plea agreement "by simply highlighting evidence already before the court[.]" It maintains that Sage has not demonstrated that the prosecutor's statements at sentencing either undermined the plea agreement or "constituted the State trying to avoid its obligations[.]"

6

*Claim for Ineffective Assistance of Counsel*

¶16    Criminal defendants are guaranteed the right to effective assistance of counsel. *See* U.S. Const. amend. VI; Mont. Const. art. II, § 24. To prove ineffective assistance of counsel, a defendant must demonstrate first that counsel performed deficiently, and second that the deficient performance prejudiced the defense. *Whitlow*, ¶ 10 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

¶17    When a defendant enters a plea of guilty or nolo contendere, pursuant to § 46-12-211(1)(b), MCA, a prosecutor "agrees that a specific sentence is the appropriate disposition of the case[.]"  If a sentencing court rejects a "(1)(b)" plea agreement, the court must afford the defendant the opportunity to withdraw the plea, advising that if the defendant persists with the plea, "the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." Section 46-12-211(4), MCA.

¶18    In *Lewis*, this Court held that, absent a specific plea agreement on the point, sentencing courts may impose a parole restriction without offering defendants the opportunity to withdraw their pleas; we reasoned that if the plea agreement is silent on the issue of parole, imposing a parole restriction does not constitute a court's rejection of a (1)(b) plea agreement. *Lewis*, ¶¶ 17-19. Sage maintains that his counsel performed deficiently by negotiating a (1)(b) plea agreement that contained no provision on parole, without understanding that Sage could receive a parole restriction without the opportunity to withdraw his plea.

¶19 We will consider ineffective assistance of counsel claims on direct review only if the claim is "based solely on the record." *Heavygun*, ¶ 8. "[I]f the record does not demonstrate 'why' counsel did or did not take an action which is the basis of the claim, the claim is more suitable for a petition for postconviction relief where a record can be more fully developed." *Heavygun*, ¶ 11 (citing *State v. Sartain*, 2010 MT 213, ¶ 30, 357 Mont. 483, 241 P.3d 1032).

¶20 Sage argues the record reveals that his counsel did not understand *Lewis* and that his claim is appropriate for direct review. Sage notes that his counsel advocated for a lesser sentence than the one adopted by the plea agreement, arguing that his counsel would not do this if he understood the nature of a (1)(b) plea agreement. Sage also points to the reaction from his counsel when the District Court added the parole restriction. Sage contends that his counsel would not have been "taken by surprise," asking the court to reconsider the parole restriction if counsel understood *Lewis*. Sage argues also that the record demonstrates prejudice because Sage received a parole restriction that he was unaware could be imposed.

¶21 Contrary to Sage's arguments, the record does not demonstrate "why" Sage's counsel negotiated a (1)(b) plea agreement that was silent regarding the issue of parole. The State offered to dismiss eight charges in exchange for one admission of guilt. It is plausible that the State would not agree to such a favorable deal if Sage's counsel insisted that Sage should also be recommended for parole. Though counsel asked the court to reconsider the parole restriction, even going so far as to say that Sage should be allowed to

withdraw his plea, the record does not reflect whether counsel considered *Lewis*. The court did not ask counsel about *Lewis*, nor did anyone mention *Lewis* at the sentencing hearing. In response to counsel asking the court to reconsider the issue of parole, the court stated that it takes "the position when a plea agreement is silent on a parole issue that's one of the things that's left open to the court." Without more information in the record reflecting why defense counsel entered a (1)(b) plea agreement or why counsel advocated for a lesser sentence at the sentencing hearing, we cannot determine whether counsel acted deficiently. *See Heavygun*, ¶ 22 ("[A] record which is silent about the reasons for counsel's actions or omissions seldom provides sufficient evidence to rebut [the] presumption" that counsel acted within the wide range of reasonable professional assistance.).

¶22 Even if the record did reflect why counsel made certain decisions regarding the alleged deficiency, the record does not contain evidence that Sage was prejudiced. The State offered Sage a favorable plea, dismissing eight of the charges brought against him. The record does not contain evidence that Sage would have chosen to decline the favorable plea if he knew that he would be subject to a parole restriction. We decline to review the merits of Sage's ineffective assistance of counsel claim on direct appeal because it is not based in the record. Sage has an opportunity to pursue this claim in a postconviction proceeding, where a record may be fully developed.

*Claim for Breach of Plea Agreement*

¶23 Sage next argues he is entitled either to withdraw his plea or to obtain a sentence without the imposition of the parole restriction because the prosecutor "actively undercut"

the State's recommended sentence. Sage's trial counsel did not object to the prosecutor's presentation of the State's case at the sentencing hearing, nor did Sage's trial counsel move the District Court to withdraw the plea on this basis. We will review this issue for plain error because, though he did not preserve it for appeal, a breach of the plea agreement implicates Sage's constitutional rights. *See State v. Rardon*, 2002 MT 345, ¶ 16, 313 Mont. 321, 61 P.3d 132. To constitute plain error, the prosecutor must have breached the plea agreement and in turn tainted or affected the fairness of the sentencing proceeding. *Rardon*, ¶ 17.

¶24 We consider first whether the prosecutor breached the plea agreement. Plea agreements "must be attended by safeguards" to ensure defendants receive "what is reasonably due in the circumstances." *State v. Allen*, 199 Mont. 204, 208-09, 645 P.2d 380, 382 (1981) (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 498-99 (1971)). Plea agreements are treated like contracts, obligating the State to strictly fulfill the terms of the agreement. *State v. McDowell*, 2011 MT 75, ¶ 14, 360 Mont. 83, 253 P.3d 812. Prosecutors are expected to meet "strict and meticulous standards" when plea bargaining, "as a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation." *Allen*, 199 Mont. at 209, 645 P.2d at 382. Prosecutors are not permitted to undermine the State's sentencing recommendation. *State v. Rardon*, 2005 MT 129, ¶ 19, 327 Mont. 228, 115 P.3d 182.

¶25 At sentencing, the State emphasized Sage's inability to conform his criminal behavior, calling him "a sexual predator and a career criminal." The State noted Sage's

10

advanced age, telling the court it hoped "he will not be in a condition to prey upon anyone else" by the time he completed his sentence. Sage argues that these statements were made to convince the District Court to keep Sage "behind bars for as long as possible." Because the plea agreement was silent on parole, Sage contends that the State "did not have the legal authority to then argue for a parole restriction in all but name." Sage maintains that the State failed to adhere to its requisite standard of performance in a plea agreement; it should have remained silent on the issue of parole.

¶26    Though prosecutors are expected to provide more than "lip service" in support of plea agreements at sentencing, we do not adhere to specific "criteria defining when a prosecutor has merely paid lip service . . . as opposed to when she has fairly, but strongly, presented the State's case." *State v. Hill*, 2009 MT 134, ¶ 29, 350 Mont. 296, 207 P.3d 307.

¶27    In *McDowell*, we held that a prosecutor did not undermine the plea agreement when the prosecutor was forced to both advocate for the State's recommended sentence and argue against the defendant's proposed lesser sentence. *McDowell*, ¶ 21. The prosecutor in *McDowell* "emphasized that the crimes were premeditated, serious and that [the defendant] had a prior criminal history" in response to the defendant requesting a lesser sentence than the plea agreement proposed. *McDowell*, ¶ 9. Here, the prosecutor recommended that Sage receive a total sentence of twenty years, with ten suspended, after drawing the District Court's attention to the nature of the crimes and the dismissed charges. Despite the agreed recommendation in the plea agreement, Sage's counsel requested that Sage's sentence be

served through probation rather than incarceration. The State was not obligated to let Sage's counsel present an uncontested argument for a probationary sentence without advocating strongly for the court to adopt the recommended sentence in the plea agreement.

¶28 The explicit terms of the plea agreement establish that Sage received what the State promised to recommend: a twenty-year commitment to the Montana State Prison with ten years suspended. The State did not undermine this recommendation when it strongly advocated for the court to adopt the plea agreement rather than Sage's request for a probationary sentence. *See McDowell*, ¶ 21.

¶29 A sentencing court "may consider any relevant evidence relating to the character of the defendant, his history, his mental and physical condition, and the broad spectrum of incidents making up his background." *Hill*, ¶ 31. The court may consider "other acts, even those which are dismissed pursuant to a plea bargain agreement." *Hill*, ¶ 31 (citation omitted). We have held that a prosecutor does not breach a plea agreement when reminding the sentencing court to consider evidence of which the court was already aware, including dismissed charges or an extensive criminal history. *Hill*, ¶ 31. Here, the prosecutor did not raise evidence that the court otherwise did not have in Sage's psychosexual evaluation or presentencing investigation report.

¶30 We conclude that the State did not breach the plea agreement when it advocated for the District Court to adopt the recommended sentence and argued that Sage's request for a probationary sentence would be inappropriate. We therefore need not reach the second part of plain error review, whether the breach tainted the sentencing proceedings.

12

¶31 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. We affirm the District Court's sentence without prejudicing Sage's ability to petition for postconviction relief regarding his ineffective assistance of counsel claim.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE