FILED

07/23/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0593

DA 22-0593

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 151N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JARRID KEITH CANFIELD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 21-200
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Joseph P. Howard, P.C., Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

          Bill Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  June 12, 2024
Decided:  July 23, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jarrid Keith Canfield appeals from his August 26, 2022 Judgment and Commitment for the offenses of Vehicular Homicide while Under the Influence pursuant to § 45-5-106, MCA, and Criminal Child Endangerment pursuant to § 45-5-628, MCA. We affirm.

¶3 On September 7, 2021, Canfield was driving his truck with his partner Jordan in the passenger seat and their three daughters, ages 7 to 10, in the rear.[1] At the time, he had THC in his body at a level higher than 8 ng/ml. Canfield was assaulting Jordan and almost crashed several times while their daughters held each other in the back seat. The third time he hit Jordan, he took both hands off the steering wheel, veered into the oncoming traffic lane, took evasive action, and overcorrected. The truck went off the road and rolled several times before coming to a stop. Jordan was partially ejected from the truck and was pinned underneath it; she did not survive. One of their daughters was fully ejected from the truck but all three survived with injuries.

---

[1] Canfield pleaded guilty to amended charges. As such, the facts are taken from the affidavit in support of the motion for leave to file the information.

¶4     The State filed five charges against Canfield: Negligent Homicide pursuant to § 45-5-104, MCA, which was later amended to include an alternative charge of Vehicular Homicide while Under the Influence pursuant to § 45-5-106, MCA; three charges of Criminal Endangerment pursuant to § 45-5-207, MCA, for each of his daughters; and Partner or Family Member Assault pursuant to § 45-5-206, MCA. Canfield and the State entered a plea agreement pursuant to § 46-12-211(1)(c), MCA, (which is non-binding on the court) in which Canfield pleaded guilty to Vehicular Homicide while Under the Influence and Criminal Child Endangerment. In exchange, the State dropped the remaining charges. The State agreed to recommend a 20-year commitment to prison, with none suspended, for the homicide charge and a 10-year commitment, fully suspended, for the child endangerment charge. Canfield was free to argue for any lawful sentence. Additionally, Canfield and the State agreed that "[t]he parties are otherwise free to recommend and argue for any other lawful term of sentence and/or conditions thereto, subject to a final decision by the [c]ourt." Canfield signed an acknowledgment of rights that said he understood the District Court might impose "imprisonment without possibility of parole or furlough."

¶5     At sentencing, the State argued for 20 years at state prison, but also asked the court to restrict Canfield's eligibility for parole under the "any other lawful term of sentence" agreement and pursuant to § 46-18-202(2), MCA. Canfield's counsel expressed shock at the State's recommendation, saying that a parole restriction had never been contemplated between the parties during plea discussions. Nevertheless, Canfield did not object and argued for his own recommended sentence. The District Court rejected both parties'

recommendations and imposed a 30-year sentence to Montana State Prison with none suspended and a 30-year parole restriction for the homicide charge. Canfield appeals, arguing that he received ineffective assistance of counsel (IAC) when counsel unknowingly left open the possibility that the State could argue for a parole restriction and that he is entitled to withdraw his plea agreement because the prosecutor acted in bad faith at sentencing by undercutting the agreed recommendations.

¶6 Canfield acknowledges that, based on the plain language of the plea agreement and our holding in *State v. Lewis*, 2012 MT 157, ¶¶ 17, 19, 365 Mont. 431, 282 P.3d 679, the State was free to seek a parole restriction and the court was free to impose one. Canfield argues that he received ineffective assistance of counsel for counsel's failure to understand that the State might seek such a restriction and counseling Canfield to enter into the plea without that understanding.

¶7 We generally will not review IAC claims on direct appeal if it is not record based— i.e., if the record does not adequately document *why* counsel acted in a particular manner. *State v. Lucero*, 2004 MT 248, ¶ 16, 323 Mont. 42, 97 P.3d 1106. Canfield argues that his counsel failed to appreciate the import of the condition in his plea agreement that allowed the State to argue for a parole restriction because counsel asserted that he was "shocked the state is asking for it at this point" since they had never contemplated a parole restriction during plea discussions. However, just because counsel was shocked that the State was seeking the restriction does not mean that counsel did not understand it was a possibility, nor that Canfield did not understand the possibility when he entered into the plea agreement understanding that the District Court could impose a punishment "without possibility of

4

parole." At this point, Canfield's arguments as to what his attorney knew, or why the attorney did what they did, are speculative and are not appropriate on direct appeal. *State v. Ward*, 2020 MT 36, ¶ 22, 399 Mont. 16, 457 P.3d 955. Further, we have held that attorneys need not even advise their clients of discretionary parole restrictions that might be imposed by the court. *State v. Thomas*, 285 Mont. 112, 122–23, 946 P.2d 140, 146 (1997). We cannot say, on this record, that counsel was ineffective. If the record does not show why counsel acted in a certain way, the claim is more appropriately raised by petition for postconviction relief. *Lucero*, ¶ 16; *Ward*, ¶¶ 18–20.

¶8 Canfield next argues that he is entitled to withdraw his guilty pleas because the prosecutor actively undercut the plea agreement at sentencing. Plea agreements are subject to contract principles, and prosecutors must give more than lip service to their promises within the plea agreement. *State v. Hill*, 2009 MT 134, ¶ 29, 350 Mont. 296, 207 P.3d 307. At sentencing, the State argued for the agreed upon sentence in the plea agreement. It also argued that the court should impose a parole restriction on Canfield based on the plea agreement which stated that the "parties are otherwise free to recommend and argue for any other lawful term of sentence." Thus, at sentencing, the State allowed witnesses to testify as to the impact that this case has had upon them and Canfield's daughters. The State also highlighted information contained within the PSI and information relating to the dismissed charges. This argument was necessary for its recommendation to the District Court that it should impose a parole restriction, which was within the confines of the plea agreement. The State did not recommend a sentence contrary to its agreement—it argued for a parole restriction based on the unique facts of this case. The information and

5

argument the State relied upon in recommending the restriction was all within the bounds of the plea agreement and was not conducted in bad faith. *See Hill*, ¶¶ 27–28, 30–31; *see also State v. Collins*, 2023 MT 78, ¶ 17, 412 Mont. 77, 528 P.3d 1106.

¶9 Nor was the witness testimony improper at sentencing. It is appropriate for prosecutors to elicit testimony from victims and witnesses at a sentencing hearing, and for those victims to express their fears and feelings. *State v. Rardon*, 2005 MT 129, ¶ 17, 327 Mont. 228, 115 P.3d 182. Here, the State presented witnesses who discussed their fears and feelings stemming from Canfield's conduct. The State did not ask the witnesses any questions. Rather, the prosecutor merely stated that the witnesses had statements they would like to read and then the witnesses spoke on their own accord of their thoughts and feelings regarding sentencing without any prompting from the State. *See* § 46-18-115(4), MCA. This is a far cry from the prosecutor's conduct that we overturned in Rardon's second appeal, where the prosecutor had repeatedly and aggressively elicited inflammatory testimony clearly designed to undermine the plea agreement. *Rardon*, ¶¶ 11, 21; *see also State v. McDowell*, 2011 MT 75, ¶¶ 17–19, 360 Mont. 83, 253 P.3d 812. Here, the State's evidence and argument at sentencing was designed to seek a parole restriction, which was within the terms of the plea agreement, not to undermine the plea agreement.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶11     Affirmed.

                                                        /S/ Mike McGrath

We Concur:

/S/ Laurie McKinnon
/S/ Beth Baker
/S/ James Jeremiah Shea
/S/ Jim Rice