No. 00-431

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 345

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

WILLIAM LESTER RARDON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                     In and for the County of Flathead,
                     The Honorable Katherine Curtis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Appellate Defenders' Office, Helena, Montana

        For Respondent:

                Mike McGrath, Montana Attorney General, Pamela D. Bucy,
          Assistant Montana Attorney General, Helena, Montana; Thomas
      Esch, Flathead County Attorney, Kalispell, Montana

                  Submitted on Briefs:  April 4, 2002

                        Decided:  December 30, 2002

Filed:

_____
                           Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      This is the second appeal by William Lester Rardon (Rardon) from the sentence imposed by the Eleventh Judicial District Court.[1] We reverse and remand.

## ISSUES

¶2      The issue before this Court is whether the prosecutor breached the plea agreement when he elicited testimony allegedly undercutting the plea agreement and expressed his opinion that the only option for this type of crime was a long prison term.

¶3      Rardon asks us in the alternative, to determine whether defense counsel provided ineffective assistance when he: 1) failed to object to the prosecutor's alleged breaches of the plea agreement; and 2) recommended a sentence in excess of the plea bargained sentence recommended by the prosecutor.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      The abbreviated facts in this case are as follows:

¶5      Rardon was charged with sexual intercourse without consent and sexual assault against his two minor daughters. He pled not guilty to the charges. Rardon subsequently entered into a written plea agreement with the State in which he agreed to plead guilty to one count of sexual assault in exchange for dismissal of the other charges. In return, the State agreed to recommend "a sentence in conformity with whatever recommendation may result from the Sexual Offender Amenability

_____

[1] A complete factual background applicable to the case at bar is presented in *State v. Rardon*, 1999 MT 220, 296 Mont. 19, 986 P.2d 424 ("*Rardon I*") and will not be repeated in detail in this Opinion.

2

Evaluation and Pre-Sentence Investigation [PSI] to be performed in this case prior to sentencing." The District Court accepted Rardon's guilty plea, ordered a PSI and a Sex Offender Evaluation and dismissed the remaining counts.

¶6    The Sexual Offender Treatment Amenability Evaluation recommended, *inter alia*, that Rardon be accepted, on a probationary status, into an outpatient treatment program, without any term of years, to be completed in Great Falls according to the treatment standards of the Montana Sex Offender Treatment Association. The PSI Report (Report), on the other hand, recommended that Rardon receive a 40-year Montana State Prison (MSP) sentence with 20 years suspended. The Report further recommended that Rardon not be eligible for parole prior to completing all available phases of the Sex Offender Treatment Program (SOTP) at MSP.

¶7    At Rardon's first sentencing hearing in December 1997, the State, contrary to the plea agreement, recommended a sentence of 70 years with no eligibility for parole for at least 30 years, and in no event before he completed the SOTP. Rardon's counsel objected to the State's recommendation on the basis that it violated the plea agreement. The State responded to the objection by stating that the disparity between the sentences recommended in the PSI Report and the Sex Offender Amenability Evaluation allowed it discretion in its recommendation.

¶8    The District Court sentenced Rardon to MSP for 75 years with 15 years suspended and required that Rardon serve at least 35 years and successfully complete all phases of the SOTP at MSP before being eligible for parole.

¶9    Rardon appealed the sentence and this Court reversed the District Court concluding that the State had breached the plea agreement and that the District Court had abused its discretion when it failed to require the State to abide by the terms of the agreement. We remanded with instruction that

3

the District Court either allow Rardon to withdraw his guilty plea or, in the alternative, require specific performance of the plea agreement. We also instructed the District Court to order that a new sentencing hearing be conducted before a different judge. Rardon chose to have the plea agreement specifically performed.

¶10    In March 2000, a second sentencing hearing was held before the Honorable Katherine R. Curtis. The same County Attorney involved in the original Rardon proceeding represented the State. Rardon was represented by a court-appointed attorney. As it had in the first sentencing hearing, the State called Rardon's daughters and Rardon's estranged wife to the stand where they expressed, once again, their fear of Rardon and their desire that he be incarcerated for the rest of his life. While the State's attorney opined that Rardon deserved a lengthy sentence, he ultimately and in accordance with the plea agreement recommended that Rardon be sentenced to 40 years at MSP with 20 suspended, subject to conditions. These proceedings are described in greater detail below.

¶11    During presentation of the State's case on sentencing, Rardon's attorney did not object to any of the adverse testimony nor did he cross-examine any of the witnesses, explaining that Rardon wanted to spare them any further harm. When Rardon took the stand at his sentencing hearing, both his attorney and the State's attorney questioned him regarding his satisfaction with his court-appointed attorney's representation. Rardon indicated that he was satisfied with his representation, that he had requested that no witnesses be called on his behalf and that he believed he and his attorney had adequate time to prepare for the hearing. Rardon also testified that he agreed with the sentence recommendation that his attorney was going to make to the District Court. Subsequently, Rardon's attorney, in accordance with Rardon's request, recommended that Rardon receive a 40-year sentence in MSP, with no time suspended.

4

¶12 The District Court did not accept either the State's or Rardon's recommendation but imposed a sentence of 75 years in MSP with 25 suspended, and provided that Rardon would not be eligible for parole until he had served at least one-half of the non-suspended sentence and completed all phases of MSP's SOTP.

¶13 Immediately after the District Court's Judgment and Sentence was entered, Rardon's court-appointed attorney filed a Notice of Termination of Attorney/Client Relationship. The District Court subsequently appointed another attorney for Rardon so that Rardon could pursue this appeal.

## STANDARD OF REVIEW

¶14 In *Rardon I*, we utilized the "abuse of discretion" standard when reviewing a claim that the State had breached the plea agreement, stating, "The standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion." *Rardon I* (citing *State v. Sullivan* (1994), 266 Mont. 313, 324, 880 P.2d 829, 836). In *Rardon I*, however, Rardon's counsel objected to the prosecutor's sentence recommendation, claiming that it breached the plea agreement. On appeal, this Court concluded that the prosecutor had breached the agreement and the District Court had abused its discretion when it failed to require the State to abide by the agreement.

¶15 In the present case, Rardon's counsel did not object to the prosecutor's presentation of the State's case. Therefore, we are not reviewing any action or failure to act by the District Court. Because we are not reviewing an alleged error by the court, but rather an allegation of prosecutorial error, we must review the prosecutor's conduct in the context of the entire proceeding. Rardon's counsel seeks a *de novo* review which we conclude is the appropriate standard under these circumstances. Such review is supported by applicable Ninth Circuit cases. See *U.S. v. Johnson* (9th Cir. 1999) 187 F.3d 1129, 1134 and *U.S. v. Schuman* (9th Cir. 1997), 127 F.3d 815, 817.

5

**DISCUSSION**

¶16     The State argues that because Rardon failed to object to the prosecutor's alleged breach of the plea agreement during the sentencing hearing, he is procedurally barred from pursuing this appeal. While we agree that this Court regularly holds that issues raised for the first time on appeal will not be considered, this Court may still review claimed errors that implicate fundamental constitutional rights, when failing to do so "may leave unsettled the question of the fundamental fairness of the trial or proceedings, . . . ." *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215, *overruled in part on other grounds by State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817. *See also U.S. v. McQueen* (4th Cir. 1997), 108 F.3d 64. In *McQueen*, the defendant failed to challenge the prosecutor's alleged breach of the plea agreement during the sentencing hearing. The State subsequently admitted breaching the agreement but the Fourth Circuit had to decide whether to hear the case because McQueen had not preserved the issue for appeal. The Court concluded that it should review that case under the "plain error" doctrine. It stated:

> Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, our analysis of the plea agreement or a breach thereof is conducted with greater scrutiny than in a commercial contract (citation omitted). When reviewing a breached plea agreement for plain error, therefore, we must establish whether the breach was "so obvious and substantial that failure to notice and correct it affected the fairness, integrity or public reputation of the judicial proceedings" (citation omitted).

*McQueen*, 108 F.3d at 66.

¶17     In this case, we must determine whether the prosecutor breached the plea agreement which, in turn, may have tainted or "affected the fairness of" the sentencing proceeding. We also note we are presented here with a unique set of facts, given that this is the second time that we have been called upon to assess the prosecutor's performance of the plea agreement negotiated between the

6

State and Rardon.

¶18 This Court has addressed the enforceability of plea agreements on several occasions and has repeatedly held that a plea agreement is a contract between the State and a defendant and is subject to contract law standards. *State v. Munoz*, 2001 MT 85, ¶ 14, 305 Mont. 139, ¶ 14, 23 P.3d 922 ¶ 14. "No principle of fairness or contract law allows the State to retain the benefit of its agreement and avoid its obligation." *State v. Bowley* (1997), 282 Mont. 298, 314, 938 P.2d 592, 601 (Trieweiler, J., specially concurring). Indeed, we have emphasized that prosecutors "must meet strict and meticulous standards of both promise and performance" relating to plea agreements, because a guilty plea resting on an unfulfilled promise in a plea bargain is involuntary and "[p]rosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable." *State v. LaMere* (1995), 272 Mont. 355, 359, 900 P.2d 926, 929. *See also State v. Schoonover*, 1999 MT 7, 293 Mont. 54, 973 P.2d 230 and *Bowley*, 282 Mont. 298, 938 P.2d 592.

¶19 In the case before us, the prosecutor did give lip service to the letter of the plea agreement-- he recommended that the District Court impose the sentence recommended in the PSI. However, during the presentation of the State's case, he solicited inflammatory testimony from the victims as to the length of sentence to be recommended under the plea agreement. In one such instance, he specifically asked a witness what she thought of the sentencing recommendation he was going to make to the court after explaining to her that if the recommendation was accepted, Rardon could be eligible for parole as early as 2003. The witness, not surprisingly, opposed the agreed-upon recommended sentence. With another witness and victim, the prosecutor observed, "You want to have a chance to live and raise your [one and one-half year and four-month old] kids without having to look over your shoulder and . . . . And knowing he's in prison is gonna go a long ways toward

7

making you feel safe." The witness strongly agreed, volunteering that she wanted the original but reversed sentence of seventy-five years to be reinstated so that she would "have time to raise my kids on my own, . . ., knowing I can send them to school without having to worry about 'Are they gonna come home off the bus?'" Then, during his questioning of Rardon, he attempted to solicit agreement from Rardon that Rardon should be imprisoned until Rardon's grandchildren were grown.

¶20 Lastly, during summation, the prosecutor preceded his sentence recommendation by reiterating and emphasizing the negative aspects of Rardon's sexual offender evaluation, including the observation that Rardon's "resentment may mount into acts of brutal hostility. And as he himself has acknowledged, when he's drinking, using drugs, he is a miserable SOB." He also repeated for the court the Report's recognition that "a long-term prison sentence at least over his head" would be a "motivator" toward Rardon's rehabilitation. Having done all these things, the prosecutor then recommended that Rardon be sentenced to 40 years with 20 suspended, in accordance with the plea agreement.

¶21 There are no hard and fast criteria that define when a prosecutor has merely paid "lip service" to a plea agreement as opposed to when a prosecutor has fairly, but strongly, presented the State's case in order to influence a court to accept its sentencing recommendation. Each case stands or falls on the facts unique to it. In *LaMere*, 272 Mont. 355, 900 P.2d 926, the prosecutor, as in the case at bar, also recommended the sentence agreed upon in the plea agreement, but on his way to the recommendation he emphasized LaMere's less desirable characteristics, *i.e.*, he spends most of his time drinking or bragging about drinking, he never finishes anything including school and jobs, and he does not want treatment for his alcohol and drug abuse problems. The prosecutor then, in a

8

bizarre juxtaposition, recommended a deferred sentence subject to certain conditions. The sentencing court, after reiterating LaMere's previously-described character flaws, rejected the plea agreement sentencing recommendation and imposed a much harsher sentence. This Court reversed and remanded for resentencing after concluding that the prosecutor's actions failed to "meet the strict and meticulous standards of performance of the plea agreement." *LaMere*, 272 Mont. at 360, 900 P.2d at 929.

¶22 Under the facts of this case, we conclude that the prosecutor's fervor in soliciting and offering evidence that would almost undoubtedly cause the court to question the appropriateness of the recommended sentence effectively undercut the plea agreement. While we agree it is completely appropriate for the prosecutor to question victims and solicit their testimony at a sentencing hearing and for those victims to express their fears and feelings, it is not acceptable for a prosecutor to aggressively solicit testimony that is clearly intended to undermine the plea agreement and to convince the sentencing court that a plea bargained sentence recommendation should <u>not</u> be accepted. *See State v. Van Buren* (Wash. App. Div. 2 2002) 49 P.3d 966 (Prosecutor need not make the recommendation enthusiastically but must act in good faith and must not undercut the plea agreement explicitly or by conduct evidencing an intent to circumvent the agreement's terms (citations omitted)); *State v. Sledge* (Wash. 1997), 947 P.2d 1199 (Although the prosecutor adhered to the recommended disposition from the plea agreement, in a requested disposition hearing she called and vigorously examined witnesses on aggravating factors supporting an exceptional disposition based on manifest injustice. She then gave a summation detailing the aggravating factors.). *See also Matter of Palodichuk* (Wash. App. 1978), 589 P.2d 269 (Prosecutor technically adhered to the terms of the agreement by recommending probation as promised, but by expressing

9

sentence reservations he tainted the sentencing process so that a breach occurred).

¶23    While the State does not claim that the prosecutor did NOT breach the agreement, it argues that because the District Court was not bound to accept the recommendations of either party, the PSI or SOE, this Court should not "second-guess" the sentence imposed by Judge Curtis, which is quite similar to the original sentence imposed by Judge Lympus. This suggestion, however, fails to consider that both of the judges were subject to the prosecutor's breach of the agreement and therefore both sentencing procedures were tainted. In *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, the U. S. Supreme Court reversed and remanded a sentence after concluding that a replacement prosecutor breached a plea agreement of which he was not a participant, by recommending the maximum one-year sentence when his predecessor had agreed to make no recommendation as to the defendant's sentence. As to the potential impact the breach had on the sentencing judge, Chief Justice Burger stated:

> We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.

*Santobello*, 404 U.S. at 262-63, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

¶24    The Eleventh Circuit Court of Appeals when faced with a similar argument that the sentencing court "may not have considered the government's breaching statements when it determined [defendant's] sentence," stated, "there is no indication that the court did not consider those breaching statements when it determined, to [defendant's] detriment, that the PSI position on relevant conduct was correct. Presumably the government attorney who made those statements

10

thought that they might influence the judge, or else there would have been no point in making them. Absent some reason in the record for second guessing that government attorney's evaluation of the possible effect of his advocacy, we are unwilling to conclude that it had no effect." *U.S. v. Taylor* (11th Cir. 1996), 77 F.3d 368, 371.

¶25 While we agree that the judge in this case had the statutory authority to impose the lengthy sentence, we nonetheless conclude that the sentencing judge should have the benefit of making such decision based on a good faith and fair presentation of the State's case. Based on the foregoing authorities, we cannot simply let the prosecutor's overzealous presentation stand. Accordingly, we must remand for resentencing. Having determined that this matter is to be remanded to the District Court for resentencing, we need not address the claim of ineffective assistance of counsel.

## CONCLUSION

¶26 We reverse and remand this matter to the District Court. In accordance with our previous holding in *Rardon I*, it is within the sound discretion of the sentencing judge to determine the appropriate remedy for the prosecution's breach of a plea agreement. The sentencing judge may either allow Rardon to withdraw his guilty plea or, in the alternative, require specific performance of the plea agreement and order that a new sentencing hearing, in which the State is represented by a different prosecutor, be conducted before a different judge, in a manner consistent with this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

11

Justice Jim Rice dissenting.

¶27　I respectfully dissent. In this case and on this record, I would not invoke the doctrine of plain error to reach the issues which were not preserved for appeal by the Defendant.

¶28　Two district court judges have conducted hearings in which statutory considerations for sentencing have been fully developed and presented. The victims have twice testified about the horrendous, long-term abuse perpetrated upon them by the Defendant. Similar, but not identical, sentences have been imposed following the judges' separate review of the evidence. Despite that, the Court excuses the Defendant's failure to preserve any issues for appeal and, invoking plain error, requires the parties to engage in this difficult process a third time.

¶29　The Court would lay the blame for this result on the prosecutor. Although it acknowledges that the prosecutor recommended a sentence in accordance with the plea agreement, the Court nonetheless reaches the conclusion that the "the prosecutor's fervor . . . would almost undoubtedly" sway the sentencing court to impose a harsher sentence. I do not draw any such inference from a reading of the entire record. Neither do I find that the prosecutor's actions were as egregious as the Court implies. The sentencing transcript reveals that the victims often volunteered comments, based upon their knowledge of the earlier sentence, which were not prompted by specific questions about the earlier sentence by the prosecutor.

¶30　It is not necessary to either fault or excuse defense counsel's failure to contemporaneously object to what the Defendant now finds objectionable about the sentencing. Rardon and his counsel offered an atypical approach and presentation during the hearing. Refraining from confrontation throughout, defense counsel went so far as to recommend a harsher sentence than that recommended by the prosecutor. Such an unusual approach is not necessarily ineffective *per se*, but most certainly would have an explanation. Defense counsel obviously had the benefit of the first sentencing

12

hearing, and his approach may have been influenced thereby. The record on appeal, of course, does not reflect the reasons behind defense counsel's actions or inaction, or whether those decisions were part of a sentencing strategy. I would hold, in accordance with our law, that Defendant's issues were not preserved for appeal, and that the Defendant's objections to his counsel's failure to preserve those issues, or to his overall performance, may be pursued by way of a post-conviction relief proceeding, where a proper inquiry may be made into the reasons for counsel's approach.

¶31    I would affirm.

/S/ JIM RICE

Chief Justice Karla M. Gray joins in the dissent of Justice Rice.

/S/ KARLA M. GRAY