DA 14-0451

FILED

May 24 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0451

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 123N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BRIAN WELTY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DC 13-329C
                    Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Lisa S. Korchinski, Assistant
            Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
            Attorney General, Helena, Montana

            Ed Corrigan, Flathead County Attorney, Kenneth R. Park, Deputy County
            Attorney, Kalispell, Montana

Submitted on Briefs:  April 6, 2016

Decided:  May 24, 2016

Filed:

_____
                         Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Brian Welty (Welty) appeals from a judgment and sentence entered by the Eleventh Judicial District Court, Flathead County. We affirm.

¶3      In District Court Cause Number 13-329(C), the State charged Welty with two counts of Criminal Distribution of Dangerous Drugs, each being a felony in violation of § 45-9-101(1), MCA. The basis of the charges was an allegation that Welty, on two separate occasions, sold, exchanged, or gave away heroin to a confidential informant. In District Court Cause Number 13-426(C), the State charged Welty with Criminal Possession of Dangerous Drugs, a felony in violation of § 45-9-102(1), MCA. Welty initially pleaded not guilty to each of the three charges. On February 6, 2014, Welty entered into a plea agreement whereby he agreed to plead guilty to one count of Criminal Distribution of Dangerous Drugs and the State agreed to dismiss the remaining two charges. Additionally, the State agreed to recommend a sentence to the District Court of "ten (10) years Department of Corrections with five (5) years of those years suspended and recommendation to Connections Corrections and Prerelease."

2

¶4    On April 3, 2014, the District Court held a sentencing hearing. Stan Howe, Ronald Clem (Clem), Floyd Welty, Kevin Welty, and Christine Kramer testified. Each witness offered their opinion about which of three different placement options available would be best for Welty to address his substance abuse issues: Connections Corrections, Nexus Treatment Center (Nexus), or Teen Challenge Drug Addiction Treatment Center (Teen Challenge).

¶5    Several of Welty's family members testified. Floyd Welty, Welty's grandfather, testified that he thought Teen Challenge would be Welty's best option for treatment because it is a long-term treatment facility. Kevin Welty, Welty's father, testified that he also thought Teen Challenge would be best for Welty. Christine Kramer, Welty's Aunt, testified that Teen Challenge would be best for Welty because it offers the best opportunity for success. She explained that the family would pay for Teen Challenge and she would be willing to transport Welty to Spokane, where Teen Challenge is located.

¶6    In addition to Welty's family, Stan Howe, the intake coordinator at Teen Challenge, testified that Teen Challenge is a 12-month long unlocked residential facility with a faith-based treatment program for people of all ages with life controlling addictions. Stan Howe described Welty, at age 24, as "an ideal fit" for the program. Clem, a retired Los Angeles-area police officer knowledgeable about drug treatment facilities in Montana, testified that he was familiar with Connections Corrections, Nexus, and Teen Challenge and discussed the differences among the treatment facilities. Clem described Connections Corrections as "dismal" and too short-term to effectively treat

heroin addiction. Later, on cross-examination, the State asked whether Clem thinks Nexus is a better program than Connections Corrections. Clem answered, "Absolutely I do." He cited Nexus' "good" success rate and commented that "I've been through a tour of their facility, it's a great program, they have Job Service, they do a lot of great things."

¶7 After the witnesses testified, the Court asked the State to clarify whether its recommendation in the plea agreement for placement at Connections Corrections remained the State's recommendation to the Court. The State responded that it was, adding, "however, in listening to Mr. Clem it sounds like maybe the Court could take into consideration that Nexus might be a better alternative being a longer term facility." The Court inquired further, "so you're sticking with the recommendation of the Connections Corrections and not Nexus?" The State's response was "I believe based on recent rulings with the court we have to with the plea agreement. Now if the Court heard something with the Nexus program that the Court likes better, it's entirely up to you."

¶8 On appeal, Welty argues the State violated the terms of the parties' plea agreement by soliciting testimony about alternative treatment options from Clem and reminding the District Court that it could depart from its plea agreement recommendation of Connections Corrections and sentence Welty to Nexus. Welty argues the State "proffered a hollow recommendation" for Connections Corrections, giving only "lip service" to the plea agreement, and advocated for placement at Nexus instead.

¶9 The issue raised on appeal is whether the State breached its plea agreement with Welty by soliciting testimony for a different treatment program than the one it was

4

required to recommend. Whether the state breached a plea agreement is reviewed de novo. *State v. Manywhitehorses*, 2010 MT 225, ¶ 10, 358 Mont. 46, 243 P.3d 412 (citation omitted).

¶10 Welty admits that he did not raise this issue in the District Court but urges this Court to exercise its discretionary plain error review. "Before this Court will find plain error, the appealing party must: (1) show that the claimed error implicates a fundamental right and (2) firmly convince this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *State v. Favel*, 2015 MT 336, ¶ 23, 381 Mont. 472, 362 P.3d 1126 (internal quotations and citation omitted). On occasion, we have conducted plain error review of an allegation that a plea agreement was breached "[b]ecause a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement." *State v. Rardon*, 2002 MT 345, ¶ 16, 313 Mont. 321, 61 P.3d 132 (citation omitted). However, we will only find plain error if, under the second part of the test, the Court is firmly convinced that the State's alleged breach resulted in a manifest miscarriage of justice, called into question the fundamental fairness of the trial or proceedings, or compromised the integrity of the judicial process.

¶11 "Prosecutors, as well as defendant's, are bound by the plea agreements they make." *State v. Hill*, 2009 MT 134, ¶ 29, 350 Mont. 296, 207 P.3d 307. "A prosecutor must give more than lip service to her plea bargain. However, there are no hard and fast

5

criteria defining when a prosecutor has merely paid lip service to a plea agreement as opposed to when she has fairly, but strongly, presented the State's case." *Hill*, ¶ 29.

¶12 Welty called Clem to testify and first asked whether he was familiar with Connections Corrections, Nexus, and Teen Challenge. On appeal, the State argues Welty initially questioned Clem on the different treatment facilities and "opened the door" to the State's cross-examination including asking whether Clem thought Nexus was a better program than Connections Corrections and whether Nexus was a better choice for Welty than Teen Challenge. We agree that Welty opened the door to Clem's testimony regarding his personal opinion of the varying attributes of the alternative treatment facilities. The State did not proffer a hollow recommendation for Connections Corrections or offer mere lip service to its plea agreement by cross-examining Clem about his opinion of the facilities. Likewise, the State appropriately clarified its recommendation and reminded the District Court that it was ultimately the Court's decision where Welty would be treated. The State did not breach its plea agreement with Welty. Further, the claimed error is not a manifest miscarriage of justice or fundamentally unfair, and it does not compromise the integrity of the judicial process. Therefore, we find no plain error and decline to reverse.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no issues of first impression and does not establish new precedent or modify existing precedent.

6

¶14 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE