FILED

05/28/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0401

DA 22-0401

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 108

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERT MICHAEL ARELLANO,

      Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2020-516
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Rufus I. Peace, Peace Law Group, LLC, Jacksonville, Florida

      For Appellee:

      Austin Knudsen, Montana Attorney General, Bjorn Boyer, Assistant
Attorney General, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  April 17, 2024

Decided:  May 28, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Robert Michael Arellano (Arellano) was charged with six counts of sexual intercourse without consent (SIWOC), one count of sexual abuse of children, and one count of tampering with a witness. All six counts alleged that when the offenses were committed between January 1, 2019, and July 18, 2020, the victim, S.M., was under 12 years of age. The State and Arellano entered into a plea agreement which was subsequently determined by the District Court to be illegal. Arellano went to trial before a jury and was convicted of all eight counts. The court sentenced Arellano to a total sentence of 210 years, with 100 years suspended. Because of the length of Arellano's unsuspended time, the court concluded he would not be eligible for parole for 25 years and thus the legislative changes to the statute relative to parole restrictions were inconsequential. Arellano appeals the District Court's denial of his motion for specific performance of his plea agreement. We affirm.

¶2 We restate the dispositive issue on appeal:

¶3 *Whether the District Court erred by finding the proposed plea agreement was unenforceable because its terms were illegal.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Arellano had a long-term relationship with S.M.'s mother (Mother). After several months of dating, Arellano moved into Mother's house with her four children in 2015. S.M. was five years old and her older sister, G.M., was seven years old. The other two children were teenagers.

¶5     Arellano began anally raping S.M. when she was approximately eight years old. S.M. indicated the assaults occurred once or twice a month and continued after the family moved to Montana.  At some point, S.M. began recording the assaults in her journal so that she would be able to recall the dates they occurred.  G.M. confided in S.M. that Arellano was also sexually assaulting her.  When S.M. and G.M. told a friend about the abuse, the friend told her mother, who contacted police.  Police obtained a search warrant and went to the residence prior to contacting anyone.  Only S.M. and her older sister were present. When Mother arrived, Arellano was communicating with her and telling her not to talk to the police.  G.M. and S.M. were taken from the residence for forensic interviews.  They both reported during the interviews a long history of Arellano sexually abusing them.

¶6     The State charged Arellano with six counts of SIWOC pursuant to § 45-5-503(4), MCA, which sets forth the penalty when the victim is under 12 years of age.  The penalty when a victim is under 12 years of age is a term of imprisonment for 100 years, 10 of which could not be suspended or deferred and the offender could not be eligible for parole. Section 45-5-503(4)(a), MCA (2017).[1]   However, the State inconsistently advised the penalty was a term of imprisonment of not less than 4 years or more than 100 years—the penalty pursuant to § 45-5-503(3), MCA, when the victim is 16 years or younger.  Thus, although S.M. was less than 12 years of age at the time of the offense, the State gave notice of a penalty for a victim who is less than 16 years of age.  The State subsequently filed an

_____

[1] In 2019, the Legislature increased the 10-year parole restriction to 25 years, which became effective October 1, 2019, during the time frame in which the assaults occurred.

3

amended information adding a count of tampering but did not correct the penalties for SIWOC or sexual abuse.

¶7 Arellano and the State entered into a plea agreement. The plea agreement proposed the State would amend Count I to sexual intercourse without consent by common scheme and provided the offense was punishable by a term of not less than 4 years or more than 100 years, and a fine of up to $50,000, or both. In return for Arellano entering an *Alford* plea to amended Count I, the parties would jointly recommend that Arellano be sentenced to the Montana State Prison (MSP) for a term of 50 years, with 20 of those years suspended. The plea agreement was made non-binding on the court.

¶8 On September 27, 2021, the parties appeared at a change of plea hearing. The parties told the court they were recommending a 50 year sentence to MSP, with 20 years suspended. The District Court noted, however, that Arellano was charged under § 45-5-503(4), MCA, (which carried a 100 year sentence with a 25 year parole restriction) and not 45-5-503(3), MCA, and that unless the State was willing to amend the charge, the court was required under the law to impose a sentence consistent with § 45-5-503(4), MCA. As required by § 45-24-104, MCA, (consultation with victim of certain offenses), the State asked for a brief recess to discuss with S.M. the proposed substantive amendment to the charges and the plea agreement. The State then advised the court that she had consulted with the victim and the victim would not agree to amending the information to allege she was under 16 years of age, but older than 12, when the assaults were committed. The State then withdrew from the plea agreement and the case was set for trial.

4

¶9 Arellano filed a Motion for Specific Performance of Plea Agreement, arguing that the State breached its plea agreement when it refused to amend the SIWOC counts to allege an offense pursuant to § 45-5-503(3), MCA. The court concluded that the recommended sentence would be illegal and that Arellano had made a counter proposal that the offense be amended, which the State had rejected. The court denied Arellano's motion and the parties proceeded to trial on the original eight counts. Arellano was found guilty by the jury of all counts. Significantly, Arellano's convictions were not for SIWOC pursuant to a common scheme.

## DISCUSSION

¶10 While the parties argue issues of breach and mutual consent, our conclusion that the plea agreement was unlawful is dispositive.

¶11 Plea agreements are contracts generally subject to applicable contract law standards. *State v. Collins*, 2023 MT 78, ¶ 14, 412 Mont. 77, 528 P.3d 1106. However, because defendants waive fundamental state and federal constitutional rights when they are induced to plead guilty by reason of a plea agreement, defendants have a substantive right to be treated fairly throughout the plea-bargaining process. *Collins*, ¶ 14; s*ee Santabello v. New York*, 404 U.S. 257, 264, 92 S. Ct. 495, 500 (1971) (Douglas, J., concurring); *State v. Rardon*, 2002 MT 345, ¶ 16, 313 Mont. 321, 61 P.3d 132; *State v. Allen*, 199 Mont. 204, 208, 645 P.2d 380, 382 (1981).

¶12 As plea agreements are subject to contract law standards, "[t]he object of the contract must be lawful when the contract is made . . . ." Section 28-2-602, MCA. Further,

where a "contract has a single object and such object is unlawful . . . the entire contract is void." Section 28-2-603, MCA. When a contract is contrary to an express provision of the law, it is against the policy of the law. Section 28-2-701-(2), MCA. We have held, because contract principles relate to plea agreements, that contract "obligations cannot include the enforcement of an illegal, and therefore unenforceable, provision." *State v. Cleveland*, 2014 MT 305, ¶ 23, 377 Mont. 97, 338 P.3d 606.

¶13 In *Cleveland*, this Court determined that due to Cleveland's prior felony conviction which made him ineligible to receive a deferred sentence, the object of the plea agreement—the deferred sentence—was unlawful, void, and unenforceable. *Cleveland*, ¶ 22. We held that Cleveland was not entitled to specific performance of the plea agreement and the state correctly gave him the option to withdraw from the plea agreement or agree to a sentence in accordance with the law. *Cleveland*, ¶ 23. The circumstances apply equally here, where the plea agreement contemplated an unlawful sentence and the District Court refused to accept the plea agreement.

¶14 Arellano argues that the State was required to honor its plea agreement by amending the statutory sections to conform to the sentence it was bound by the plea agreement to recommend. While the District Court determined that Arellano's request for a substantive amendment of the statutory offenses was a counter proposal unacceptable to the State, it nonetheless concluded that the sentence recommendation was for an unlawful sentence and that the plea agreement was therefore void. We agree that the plea agreement contemplated an unlawful sentence and was void. However, it is not necessary to address whether the

6

State thereafter breached the agreement by refusing to make substantive amendments to the offense as the agreement was similarly unlawful because it contemplated Arellano entering a plea to an offense that does not exist under Montana law.

¶15 The plea agreement proposed that Arellano plead guilty to sexual intercourse without consent, *by common scheme*. Although neither the parties nor the court had the benefit of our decision in *State v. Rowe*, 2024 MT 37, 415 Mont. 280, 543 P.3d 614, when they were considering the legality of Arellano's plea agreement, it nonetheless remains true that there was no valid, cognizable offense under Montana law of sexual intercourse or assault by common scheme. *Rowe*, ¶ 20. In *Rowe* this Court held the State erroneously charged, in a single count, several instances of alleged sexual assault under a fictitious "common scheme" offense. *Rowe*, ¶ 20. We explained that the Legislature has designated certain *property* offenses that may be committed pursuant to a "common scheme" and that "nowhere in the statutory definition of felony Sexual Assault of a Minor is there any express or implied reference to a 'common scheme' as a penalty enhancer or essential element of proof." *Rowe*, ¶ 20. Here, as in *Rowe*, the State's proposed amendment to a single count of SIWOC by common scheme proposed an agreement to a fictional offense, not cognizable under Montana law.

¶16 Thus, while we agree that the District Court correctly rejected the plea agreement because it proposed a sentence not authorized by law, we also conclude the plea agreement was unlawful because it proposed Arellano plead to a fictious offense not cognizable under

Montana law; that is, the offense of sexual intercourse without consent *by common scheme* has not been designated by the Legislature as an offense in our criminal code.

## CONCLUSION

¶17 Arellano was not entitled to the enforcement of a plea agreement which proposed a penalty not authorized by law. We need not address whether the State was thereafter obligated to substantively amend the offense to allow for the plea agreement's sentencing recommendation as the plea agreement was equally unlawful because it proposed Arellano plead to a fictious offense—sexual intercourse without consent by common scheme—which is not cognizable under Montan law.

¶18 Arellano's conviction is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE

8