FILED

04/01/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0337

DA 23-0337

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 62

---

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

KORDY LEE DENNY,

       Defendant and Appellant.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-21-628
Honorable David J. Grubich, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Tammy Hinderman, Appellate Defender Division Administrator,
Alexander H. Pyle, Assistant Appellate Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Brad Fjeldheim,
Assistant Attorney General, Helena, Montana

              Joshua A. Racki, Cascade County Attorney, Amanda L. Lofink, Deputy
County Attorney, Great Falls, Montana

---

              Submitted on Briefs:  March 18, 2025

                    Decided:  April 1, 2025

Filed:

                 _____
                          Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Kordy Lee Denny appeals his April 2023 judgment and sentence in the Montana Eighth Judicial District Court, Cascade County. We address the following issue:

*Did the District Court err in ordering a presentence investigation report for two misdemeanors even though neither misdemeanor was originally charged as a sexual or violent felony?*

We reverse and remand.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 In August 2021, the State charged Denny by Information with: Count I, Partner Family Member Strangulation (PFM Strangulation), a felony in violation of § 45-5-215(1)(a), MCA; Count II, PFM Assault (PFMA), a misdemeanor in violation of § 45-5-206(1)(a), MCA; and Count III, Destruction/Tampering with a Communication Device, a misdemeanor in violation of § 45-6-105(1)(a), MCA. The State alleged that, during an argument with his ex-wife, Denny "wrapped his hands around her neck and applied pressure for about 10 seconds." When she tried to call 911, Denny took her cell phone from her "and threw it against the headboard." After she retrieved the phone, Denny tried to take it from her again. When she resisted, he "punched [her] three times in the face." Denny appeared and pleaded not guilty to all charges.

¶3 In December 2022, Denny signed an Acknowledgment of Waiver of Rights and Plea Agreement. Pursuant to the agreement, Denny agreed to plead guilty to Counts II and III (PFMA and Destruction of a Communication Device), in exchange for dismissal of Count I (PFM Strangulation) and the State's sentencing recommendation.

2

¶4    The plea agreement more specifically provided that it was a so-called "binding" agreement pursuant to § 46-12-211(1)(b), MCA.[1]  If the court rejected the agreement, Denny could withdraw his pleas or proceed to sentencing.  *See* § 46-12-211(4), MCA.  However, if Denny violated any condition of the agreement, it would "convert automatically" to a "non-binding" agreement pursuant to § 46-12-211(1)(c) and (2), MCA,[2] releasing the State from its reciprocal obligation to make the agreed sentencing recommendation, and prohibiting Denny from withdrawing his pleas.  Included in the agreement were the following boilerplate[3] "capitalized and bolded conditions":

> *The foregoing sentencing recommendation is contingent upon the defendant* not being arrested for, being charged with, or there being probable cause to believe he committed any additional crime(s); making all court appearances, *cooperating with adult Probation and Parole in the preparation of the pre-sentence investigative report process*, having no additional probation violations, not violating his bail conditions, and not violating or attempting to violate any other term of this agreement or any other agreements between the parties.  In the event the defendant violates this paragraph, the State may make any sentencing recommendation allowed by law and/or may refile any dismissed charges or cases.  However, the defendant shall not be entitled to withdraw the guilty or pleas entered in this matter barring a ruling from the court allowing withdrawal.

---

[1] Section 46-12-211(1)(a)-(b), MCA, plea agreements are called "binding" because the defendant's plea is conditioned on the court's acceptance of the agreed "specific sentence," i.e., that the court "will embody in [its] judgment and sentence the disposition provided for in the plea agreement." Section 46-12-211(2)-(3), MCA.  If the court "rejects [the] plea agreement," the defendant can withdraw his plea.  Section 46-12-211(4), MCA.

[2] Section 46-12-211(1)(c), MCA, plea agreements are called "non-binding" because, instead of bargaining for a "specific sentence," the defendant agrees that the parties' sentencing "recommendation[s] or request[s]" are not "binding upon the court," and that, if the court rejects them, the defendant has no right to withdraw the plea.  Section 46-12-211(2), MCA.

[3] *See Boilerplate*, *Black's Law Dictionary* (11th ed. 2021) ("ready-made or all-purpose language that will fit in a variety of documents").

(Emphasis added and case altered.)

¶5     On January 11, 2023, although the plea agreement called for guilty pleas, Denny appeared and entered nolo-contendere pleas[4] to Counts II and III.  There, Denny specifically acknowledged that:  (1) the plea agreement was a "binding" agreement; (2) the court was not a party to the agreement and could sentence him up to the maximum punishment; (3) if the court did not "go along with" the parties' agreed sentencing recommendation, he had the right to withdraw his pleas; and (4) the prosecutor could make "a much tougher sentencing recommendation" if he violated any condition in the plea agreement "boiler plate paragraph."

¶6     Denny stipulated that the court could use the State's probable cause affidavit underlying the charging information as the factual basis for his nolo contendere pleas. After the plea colloquy, the District Court found and concluded that Denny entered his pleas knowingly, intelligently, and voluntarily.  Upon confirming that the plea agreement was "binding," the court reserved "acceptance of it" until sentencing.  The court then stated:

> I understand that even though we're down to the misdemeanor offenses here, because you were originally charged with the felony offense of strangulation of a partner or family member, I am going to order that a PSI be done in this case.

---

[4] A "nolo contendere, or "no contest," plea has the same effect as a guilty plea. *State v. Spreadbury*, 2011 MT 176, ¶ 12, 361 Mont. 253, 257 P.3d 392 (the nolo plea is not "an express admission of guilt," but rather, "consent by the defendant that he may be punished as if he were guilty") (quoting *North Carolina v. Alford*, 400 U.S. 25, 35-36 n.8, 91 S. Ct. 160, 166-67 (1970))).

Defense counsel objected, arguing that the court was not authorized to order a PSI under § 46-18-111(2), MCA, on misdemeanor offenses unless they were originally charged as sexual or violent felonies, which his were not. The State agreed, stating:

> I guess if we're strictly interpreting this, I would agree with [defense counsel]. This case was – the entire case was originally charged with the felony strangulation. However, the two charges that he has pled to in this case, the misdemeanor PFMA and the misdemeanor tampering – or the cell phone device, those were both originally charged as misdemeanors, not in the subsection of violent offenses according to [§ 46-18-111(2), MCA]. . . . I would just agree on that basis.

¶7  Finding the parties' reading of § 46-18-111(2), MCA, too "narrow," the District Court overruled Denny's objection and ordered that he complete and return a PSI questionnaire by the end of the following day. The court reasoned that it "want[ed] to know more" about Denny's "background" than what was in the record. On February 8, 2023, Probation and Parole (P&P) notified the State that Denny had not yet returned his PSI questionnaire. The next day, the State sought to revoke his bond for non-compliance with the "[c]ondition of [Denny's] release on bail . . . that [he] comply with the court's order to timely cooperate with the Presentence Investigation process." However, the District Court did not impose any such condition in its September 1, 2021 order setting conditions of release. Nor did the court require compliance with court orders as a condition of release. Nonetheless, on February 10, 2023, the District Court revoked Denny's bond and issued a bench warrant for failure "to comply with the court's order to timely cooperate with the [PSI] process." On March 7, 2023, Denny was arrested and then released on bail the next day on the condition that he complete the PSI questionnaire. Denny complied

5

with the PSI process and, on April 4, 2023, P&P filed Denny's completed PSI report with the court.

¶8 At sentencing on April 26, 2023, Denny renewed his objection to the PSI on the same grounds as stated at his change of plea. The State announced that Denny's failure to timely return his PSI questionnaire and fully "discuss his employment history during the PSI interview" was a "breach" which converted the § 46-12-211(1)(b) agreement to a -211(1)(c) agreement, and it was therefore no longer obligated to make the agreed sentencing recommendation. The State then recommended a one-year jail term with all but 34 days suspended on Count II, and a concurrent six-month jail term with all but 34 days suspended on Count III, with various fines and conditions.[5] The State asserted that its sentencing recommendation was "appropriate . . . given [Denny's] violation of the plea agreement, but more importantly, given his criminal history and the nature of the offenses charged."

¶9 Defense counsel agreed that Denny did not "fully" cooperate with P&P. However, he argued that, because § 46-18-111(2), MCA, did not authorize the District Court's PSI order, the plea agreement requirement that he submit to a PSI was illegal and void. As such, his non-cooperation could not convert the binding agreement to a non-binding agreement and Denny could still withdraw his pleas if the District Court did not accept the parties' agreed sentencing recommendation.

---

[5] By comparison, the plea agreement called for the State to recommend a one-year jail term with all but 24-72 hours suspended on Count II, and a six-month suspended jail term on Count III.

6

¶10 The District Court again disagreed that it could not order the PSI. Concluding that the plea agreement had become a § 46-12-211(1)(c) "non-binding" agreement, the court sentenced Denny to a one-year jail term with all but 120 days suspended on Count II, and a consecutive suspended six-month jail term on Count III, with various fines and conditions. Among the reasons for its sentence, the court pointed to Denny's criminal history and risk assessments, as noted in the PSI, and further noted that he was not "real cooperative" in his discussions with P&P, despite submitting to the PSI process. On the State's motion and pursuant to the plea agreement, the District Court dismissed the felony Count I. The court stayed execution of the sentence pending appeal.

## STANDARD OF REVIEW

¶11 A district court's interpretation and construction of a statute is a question of law we review de novo for correctness. *State v. Brown*, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874.

## DISCUSSION

¶12 *Did the District Court err in ordering a presentence investigation report for two misdemeanors even though neither misdemeanor was originally charged as a sexual or violent felony?*

¶13 Denny argues that the District Court erroneously ordered a PSI pursuant to § 46-18-111(2), MCA. He separately argues that the plea agreement provision requiring him to submit to a PSI was "void and unenforceable," and therefore the agreement never should have converted under its terms. Finally, Denny asserts that because the District

7

Court's error resulted in a sentence in excess of the plea agreement, he is entitled to resentencing and the State's specific performance of the agreement.

¶14 "Our purpose in construing a statute is to ascertain the legislative intent and give effect to the legislative will." *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426 (citing § 1-2-102, MCA). Statutory construction "must begin with the words of the statutes themselves." *Heath*, ¶ 25; *State v. Wolf*, 2020 MT 24, ¶ 15, 398 Mont. 403, 457 P.3d 218; § 1-2-101, MCA. "In the search for plain meaning, we must reasonably and logically interpret that language, giving words their usual and ordinary meaning." *State v. Gatts*, 279 Mont. 42, 47, 928 P.2d 114, 116 (1996). "Where the statutory language is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe." *Swearingen v. State*, 2001 MT 10, ¶ 5, 304 Mont. 97, 18 P.3d 998; *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 ("[w]e will not interpret the statute further if the language is clear and unambiguous").

¶15 Section 46-18-111, MCA, generally grants a district court discretionary authority to "request and direct the probation and parole officer to make a presentence investigation and report" "[u]pon the acceptance of a plea . . . to one or more felony offenses." Section 46-18-111(1)(a)(i), MCA; *compare* § 46-18-111(1)(b)(i), (1)(d), MCA (limiting court's discretion for sexual or violent felonies). Here, § 46-18-111(2), MCA, more specifically provides that, in the case of a misdemeanor offense,

> [t]he district court may order a presentence investigation for a defendant convicted of a misdemeanor only if the defendant was convicted of a misdemeanor that the state originally charged as a sexual or violent offense as defined in 46-23-502, MCA.

8

¶16     The plain language of § 46-18-111(2), MCA, is clear and unambiguous:  a district court may order a PSI on a misdemeanor conviction "*only if*" "the state *originally charged*" *that misdemeanor* "as a sexual or violent offense."[6]  (Emphasis added.)  Of the three offenses originally charged in the State's August 2021 Information, only the felony PFM Strangulation is a statutorily-defined "violent offense."  *See* §§ 45-5-215(1)(a), (2)(a), 46-23-502(14)(a)(viii), MCA.  Neither of the misdemeanors, PFMA or Destruction of a Communication Device, is statutorily-defined as a "sexual" or "violent" offense.  *See* §§ 45-5-206(1)(a), (3)(a), 45-6-105(1)(a), (3), MCA; *compare* § 46-23-502(10), (14), MCA.

¶17     The District Court ordered the PSI upon accepting Denny's pleas to the misdemeanor Counts II and III.  The court reasoned that § 46-18-111(2), MCA, authorized the PSI because the "original charges *include*[*d*]" felony PFM Strangulation and Denny "*was originally charged* with *a* violent offense."  But, as apparent in the charging documents, the plea agreement, Denny's change of plea, and the State's concession at that hearing, "the state" never "originally charged" either of the two *misdemeanor* Counts II and III "as a sexual or violent offense as defined in § 46-23-502."  *See* §§ 46-18-111(2), 46-23-502(10), (14), MCA; *compare* §§ 45-5-206(1)(a), 45-6-105(1)(a), MCA.  We hold

_____

[6] The District Court expressed concern that reading § 46-18-111(2), MCA, this way meant it would never be able to order a PSI on a misdemeanor offense because "it would be impossible for a misdemeanor to ever . . . fit within" § 46-23-502, MCA.  However, § 46-18-111(2), MCA, expressly contemplates that a court may, for example, order a PSI upon conviction for an offense "originally charged as a sexual or violent offense," but later amended down, through a plea agreement or otherwise, to a misdemeanor.  A court may also require the parties to submit sentencing memorandums, which can provide additional information relevant to sentencing.

that the District Court's interpretation was contrary to the plain language of § 46-18-111(2), MCA, and therefore the court erroneously ordered Denny to submit to a PSI.

¶18 We now turn to the effects of the District Court's erroneous order on the parties' December 2022 plea agreement, with the following principles in mind. "Plea agreements are contracts generally subject to applicable contract law standards." *State v. Collins*, 2023 MT 78, ¶ 14, 412 Mont. 77, 528 P.3d 1106. Because criminal defendants waive fundamental state and federal constitutional rights when they are induced to plead guilty by reason of a plea agreement, they have a substantive right to be treated fairly throughout the plea-bargaining process. *See Santobello v. New York*, 404 U.S. 257, 264, 92 S. Ct. 495, 500 (1971) (Douglas, J., concurring); *State v. Rardon*, 2002 MT 345, ¶ 16, 313 Mont. 321, 61 P.3d 132; *State v. Allen*, 199 Mont. 204, 208, 645 P.2d 380, 382 (1981); *Collins*, ¶ 14.

¶19 First, the "boiler plate paragraph" of the December 2022 plea agreement provided that the State's sentencing recommendation was "contingent upon" Denny's "cooperat[ion] with" P&P "in the preparation of the pre-sentence investigative report process." Although Denny agreed that he had to cooperate with P&P to maintain the State's reciprocal promise to make the agreed sentencing recommendation under the "binding" § 46-12-211(1)(b) agreement, the boilerplate cooperation condition applied only if the court ordered a PSI. But, for reasons stated above, the District Court was without authority under § 46-18-111(2), MCA, to order a PSI and did so erroneously. In sum, if the court had not ordered the PSI, Denny would not have been required to "cooperate with"

10

P&P "in the preparation of" a PSI report, and therefore would not have violated the terms of the plea agreement by not cooperating.

¶20 Second, parties cannot contract for that which is not lawful—a contract provision "contrary to an express provision of law" is unlawful. Section 28-2-701(1), MCA. Accordingly, § 28-2-707, MCA, provides that "[a] condition in a contract the fulfillment of which is . . . unlawful . . . is void." *See also Mont. Petroleum Tank Release Comp. Bd. v. Crumley's, Inc.*, 2008 MT 2, ¶ 56, 341 Mont. 33, 174 P.3d 948 ("[c]ourts will not enforce an illegal contract or contract provision"). "[B]ecause contract principles relate to plea agreements, . . . contract 'obligations cannot include the enforcement of an illegal, and therefore unenforceable, provision.'" *State v. Arellano*, 2024 MT 108, ¶ 12, 416 Mont. 406, 549 P.3d 428 (citing *State v. Cleveland*, 2014 MT 305, ¶ 23, 377 Mont. 97, 338 P.3d 606). In *Cleveland*, the State argued that it did not breach a plea agreement by recommending a suspended sentence, instead of the parties' agreed deferred sentence recommendation, where it discovered post-agreement that the defendant was not eligible for a deferred sentence due to a prior felony conviction. *Cleveland*, ¶ 19. We agreed and held that the State's performance obligations under a plea agreement "cannot include the enforcement of an illegal, and therefore unenforceable, provision," and thus that the defendant was not entitled to specific performance of the "illegal" deferred sentence recommendation. *Cleveland*, ¶¶ 16-23 ("the State correctly gave [the defendant] the option

11

to either withdraw his guilty plea or agree to the suspended sentence" authorized by statute).[7]

¶21 Besides not applying to Denny absent the court's PSI order, the plea agreement provision requiring cooperation with P&P in the PSI process was also illegal and therefore unenforceable against him because, under the particular circumstances, it was "contrary to an express provision of law," because § 46-18-111(2), MCA, did not authorize a PSI on his misdemeanor offenses. Given the requirements of § 46-18-111(2), MCA, the State never should have included the boilerplate cooperation condition in the plea agreement. Nonetheless, the agreement itself rendered the erroneously included cooperation provision inapplicable—under its terms, Denny was to plead guilty to misdemeanors *not previously charged as sexual or violent felonies* in exchange for dismissal of *the separate violent felony charge*. Because it could never *legally* apply to Denny, the cooperation condition was unlawful and therefore invalid. And, as in *Cleveland*, Denny could not be required to perform an illegal contract provision, nor could his failure to perform the illegal condition constitute a "breach." Consequently, absent the invalid cooperation condition, the parties'

---

[7] *See also Leibrand v. Nat'l Farmers Union Property & Casualty Co.*, 272 Mont. 1, 12, 898 P.2d 1220, 1226 (1995) (it is a "well-established principle of contract law that where a provision in a contract is void because it is contrary to public policy, the remaining portions of the agreement are enforceable to the extent the illegal provision can be separated from the valid promises"); § 28-2-604, MCA ("[w]here a contract has several distinct objects of which one at least is lawful and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest"); § 28-2-601, MCA ("[t]he object of a contract is the thing which is agreed on the part of the party receiving the consideration to do or not to do"); *compare* § 28-2-603, MCA ("[w]here a contract has but a single object and such object is unlawful, whether in whole or in part, or wholly impossible of performance or so vaguely expressed as to be wholly unascertainable, the entire contract is void").

December 2022 plea agreement remained a § 46-12-211(1)(b) "binding" agreement; the State was obligated to make the agreed sentencing recommendation; and Denny was free to withdraw his pleas if the court rejected the agreement.

¶22 We further conclude that the unlawful PSI ultimately corrupted Denny's entire sentencing proceedings. Asserting that Denny's non-cooperation had relieved it of its performance obligations under the § 46-12-211(1)(b) agreement, and based in part on Denny's "criminal history," the State recommended a different, harsher sentence than originally agreed. At that point, Denny was not allowed an opportunity to withdraw his pleas under the new, "non-binding" -211(1)(c) agreement. Then, without hearing any testimony, the District Court relied exclusively on the PSI and the two-page probable cause affidavit underlying the charging information. Importantly, the court explicitly cited Denny's criminal history, risks to reoffend and for violence, and non-cooperation "in the PSI process" as reasons for its sentence, which exceeded the State's already harsher recommendation. The State is correct that a sentencing court may consider the facts underlying a charge dismissed pursuant to a plea agreement, *State v. Hill*, 2009 MT 134, ¶¶ 27-33, 350 Mont. 296, 207 P.3d 307, and must consider a PSI if ordered, § 46-18-111(1)(a)(iii), MCA. However, the District Court had no authority to order, let alone consider, a PSI in the first instance.

¶23 Because the December 2022 plea agreement remained a § 46-12-211(1)(b) "binding" agreement at the time of sentencing, the State violated its terms by recommending a sentence exceeding the parties' agreement. Unless it "would result in a

13

miscarriage of justice," specific performance is an available "equitable remedy" for the State's breach of a plea agreement. *State v. Munoz*, 2001 MT 85, ¶¶ 13-17, 38, 305 Mont. 139, 23 P.3d 922; *State v. Warner*, 2015 MT 230, ¶ 14, 380 Mont. 273, 354 P.3d 620. Denny asks for resentencing and specific performance of the plea agreement. The State does not address Denny's requested relief, despite having an opportunity to do so, much less contend that it would result in a miscarriage of justice. We therefore resolve the uncontested issue in Denny's favor.

## CONCLUSION

¶24 We hold that the District Court erroneously ordered Denny to submit to a PSI after pleading nolo contendere to two misdemeanor offenses that were not originally charged as sexual or violent felonies. We reverse Denny's April 2023 judgment and sentence and remand to the Eighth Judicial District Court for resentencing. The record does not reflect, and the State made no argument here or below, that Denny violated any other conditions of his plea agreement, and therefore we hold that the December 2022 plea agreement remains "binding" pursuant to § 46-12-211(1)(b), MCA. If, at resentencing, the court chooses to reject the plea agreement altogether, Denny may withdraw his January 2023 nolo contendere pleas pursuant to the agreement and § 46-12-211(4), MCA. Finally, we order Denny's April 2023 PSI destroyed and stricken from the record.

¶25 Reversed and remanded for further proceedings in accordance with this opinion.

/S/ KATHERINE M BIDEGARAY

14

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE


Justice Laurie McKinnon dissenting.

¶26 I disagree with the Court's narrow interpretation of § 46-18-111(2), MCA. Here, Denny was originally charged with a violent offense—felony strangulation—and a misdemeanor PFMA and misdemeanor destruction or tampering with a communication device, all arising out of the same facts. These charges were based on one event that occurred on August 11, 2021, when Denny tried to strangle his ex-wife and then took her cell phone and threw it against a headboard. The State and Denny agreed to resolve the charges by dismissing the felony strangulation charge in exchange for Denny's plea to the two charged misdemeanors. Section 46-18-111(2), MCA, provides:

> The district court may order a presentence investigation for a defendant convicted of a misdemeanor only if the defendant was convicted of a misdemeanor that the state originally charged as a sexual or violent offense as defined in 46-23-502.

¶27 Here, the State originally charged this case as a felony strangulation. The Court's narrow interpretation would allow for a PSI only when a charge is *reduced* from a felony sexual or violent offense, despite the underlying facts and conduct supporting a felony charge being the same as those supporting a misdemeanor. This produces the anomalous situation where, if the State originally charged only felony strangulation and resolved the case through a plea agreement to misdemeanor PFMA, it could order a PSI; but where the

15

State chooses to charge both the felony and misdemeanor arising from the same facts, a PSI cannot be ordered. Such a procedural constraint is not contained in the statute, and the Court should not insert it. Further, the effect of the Court's decision is to deny trial courts information that they deem necessary to impose sentence where the State has charged a sexual or violent offense. This is obviously inconsistent with legislative intent to allow for a PSI in cases that have charged a sexual or violent offense. Section 46-18-111(2), MCA. Although the felony charge is dismissed pursuant to a plea, the trial court is not required to ignore the felony conduct. The interpretation the Court places on § 46-18-111(2), MCA, would prevent the District Court from considering relevant sentencing information when Denny is being sentenced for conduct that included a violent act.

¶28 I further object to the Court's decision that allows a defendant to choose which court orders to obey or disobey. Here, the PSI was the subject of an objection from defense counsel which was both argued by the parties and ruled on by the District Court, with the District Court ultimately requiring the PSI to be prepared. In its ruling, the District Court reasoned that the "originally charged" language of the statute would be rendered meaningless by defense counsel's interpretation; the District Court unmistakably ordered that a PSI be prepared and that Denny was to participate in its preparation. Our interpretation today that the District Court's order was wrong and that therefore Denny did not have to follow it sets dangerous precedent. It tells litigants, you may judge for yourself whether a court's orders are correct and choose for yourself which orders to follow. I

16

cannot agree with such a proposition. Denny should have complied with the District Court's order and sought relief on appeal, as our system of justice demands.

¶29     I dissent.

/S/ LAURIE McKINNON

Justice Beth Baker is joining in the dissenting Opinion of Justice Laurie McKinnon.

/S/ BETH BAKER